**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ken KIM, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 19, 2005.

Filed Nov. 15, 2005.

Lisa Y. Williams, Doylestown, for appellant.

Diane E. Gibbons, Asst. Dist. Atty., Doylestown, for Com., appellee.

BEFORE: ORIE MELVIN, OLSZEWSKI, and POPOVICH, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 Appellant, Ken Kim, challenges the judgment of sentence entered on September 20, 2004, following a jury trial convicting him of first-degree murder, firearms not to be carried without a license, simple assault, terroristic threats, possessing instruments of crime, and attempting to elude a police officer. Appellant seeks a new trial by raising a number of claims on appeal. We affirm.

¶ 2 The relevant factual and procedural histories are as follows. On December 12, 2003, at approximately 10:14 a.m., Bensalem Township Police Officers responded to a reported shooting at a Firestone Tire

Store. Lower Court Opinion, 2/28/2005, at 2. Upon arrival, the police discovered the store manager, Joseph A. Phillips ("the victim"), motionless and bleeding from two gunshot wounds. *Id.*

¶ 3 Previously, several employees observed appellant shoot the victim in the chest and flee from the scene in a truck. *Id.* The autopsy of the victim confirmed that the two gunshot wounds were the cause of death. *Id.*

¶ 4 Testimony at trial revealed that prior to the shooting, appellant, already angry when arriving at work, requested to have a fellow employee finish work on a vehicle in a garage bay. N.T., 8/25/2004, at 29–30. When this request was denied, appellant then removed the customer's vehicle from the garage without securing the wheels to the vehicle. *Id.* at 30–31. The victim reprimanded appellant for this behavior and instructed appellant to leave work for the day. *Id.* at 31–39. Appellant, however, instead retrieved a gun from his truck, returned to the manager's office, and shot and killed the victim. *Id.* Appellant also aimed his weapon at another employee who was attempting to call 911. *Id.* at 66–69. After fleeing the scene, appellant led police on a high-speed chase, ultimately crashing into a tree in a residential neighborhood. N.T., 8/24/2004, at 172–174.

¶ 5 Appellant was arrested for, and tried on, the murder and related charges. Docket Report, at 2. On August 26, 2004, after a three-day trial, the jury found appellant guilty but mentally ill of murder of the first-degree, and guilty of: firearms not to be carried without a license, simple assault, terroristic threats, possessing instruments of crime, and attempting to elude a police officer. *Id.* On September 20, 2004, appellant was sentenced, consecutively, to life in prison (for the murder charge), one to two years in prison (for the firearms charge), and six to twelve months in prison (for the attempting to elude a police officer charge). *Id.* at 2–3. Appellant's post-sentence motions were denied. *Id.* at 3. This appeal follows.[1]

¶ 6 Appellant raises a number of issues on appeal.[2] First, appellant claims that the jury verdict was against the weight of the evidence. Appellant's Brief, at 5. Second, appellant challenges the sufficiency of the evidence for his murder conviction. *Id.* Third, appellant argues that the lower court erred in failing to charge the jury with regard to voluntary manslaughter. *Id.* Fourth, appellant contends that the lower court erred in failing to allow a jury instruction with regard to appellant's reputation for peacefulness. *Id.* Fifth, appellant states that the lower court erred in failing to allow a defense witness to testify with regard to the witness's own previous living conditions. *Id.* These claims fail.

¶ 7 As noted, first, appellant claims that the verdict was against the weight of the evidence. Appellant's Brief, at 5, 15, 25. In this regard, appellant argues that a defense witness, Dr. Samuel, testified that appellant was operating under a defect of reasoning that prevented appellant from knowing what was wrong and that prevented appellant from being able to appreciate the nature and quality of his actions. *Id.* at 25. Appellant contends that the Commonwealth failed to rebut this evidence, and that the verdict was therefore

---

1. The lower court filed an exceptionally well-reasoned opinion in this matter, fully addressing all of appellant's claims. We write separately to reinforce the discussion of, and specifically affirm the reasoning behind, these points.

2. We have re-ordered appellant's issues for both clarity and ease of disposition.

against the weight of the evidence. *Id.* We disagree.

¶ 8 With regard to our standard of review, we note that the weight of the evidence is "exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003). An appellate court "cannot substitute its judgment for that of the finder of fact ... thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." *Id.* Moreover, "where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence, ... rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.*

¶ 9 Here the lower court properly dismissed appellant's challenge to the weight of the evidence. At trial, appellant's witness, Dr. Samuel, testified that appellant's history, which included living in the jungle in Southeast Asia during the time of the Vietnam War, was indicative of traumatic psychiatric experiences, and that while appellant did not exhibit any neuropsychological damage, appellant entered a disassociative state at the time of the killing. The Commonwealth presented witnesses, including a customer in the building on the day of the killing, appellant's fellow employees, and the responding police officers, all of whom testified to appellant's demeanor, statements, and actions on the day of the killing. Additionally, appellant, offered a diminished capacity defense (seeking a verdict of not guilty by reason of insanity or guilty but mentally ill), and he conceded that he had shot and killed the victim, arguing instead that he was either insane or lacking capacity to appreciate the illegality of his conduct. The jury specifically found appellant guilty but mentally ill. Because the jury verdict was well supported by the evidence produced at trial, and as it was within the sole province of the jury to weigh and determine the credibility of the evidence presented, the final verdict was not contrary to the weight of the evidence, it does not shock our sense of justice, and the lower court did not abuse its discretion in its ruling on the weight of the evidence claim.

¶ 10 Second, appellant challenges the sufficiency of the evidence for his murder conviction. Appellant's Brief, at 5, 15, 23–24. Appellant argues that the evidence was insufficient to establish that appellant acted with the specific intent to kill the victim. *Id.* at 23–24. Appellant also contends that the evidence was insufficient to establish that he shot the victim, or that he had the mental capacity to formulate the intent to kill the victim. *Id.* We disagree.

¶ 11 The standard of review for sufficiency of the evidence claims is well settled:

the standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from

the combined circumstances. The Commonwealth may sustain its burden of proof [of] proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003) (citations omitted).

¶ 12 In order to support a charge of murder of the first degree, the Commonwealth must prove that "the defendant acted with a specific intent to kill; that a human being was unlawfully killed; that the person accused did the killing; and that the killing was done with deliberation." *Commonwealth v. Smith*, 580 Pa. 392, 861 A.2d 892, 895 (2004). And, "specific intent can be inferred where a deadly weapon is used upon a vital part of the body." *Id.*

¶ 13 Here, the lower court properly dismissed appellant's challenge to the sufficiency of the evidence for his conviction of murder of the first degree. Testimony at trial revealed that appellant arrived at work angry on the day of the killing, that appellant mishandled a customer's vehicle after his request to have a fellow employee complete work on the vehicle was denied, and that appellant was reprimanded for his conduct. In response, appellant walked to his truck, retrieved his loaded handgun, concealed the handgun as he returned to the garage, entered the manager's office, pointed his handgun at the victim, and fired three shots at the victim, hitting the victim with two of the shots. Appellant followed the staggering victim while firing the shots, and then appellant prevented an employee from calling 911 for help by threatening the employee with the gun. This evidence clearly established that appellant maliciously, willfully, deliberately, and intentionally killed the victim; and viewing all this evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the fact-finder to conclude that appellant committed the charged murder of the first degree.

¶ 14 Third, appellant claims that the lower court erred in failing to charge the jury with regard to voluntary manslaughter. Appellant's Brief, at 5, 14–15, 19–21. Specifically, appellant argues that he was generally characterized as a peaceful man, that he was provoked into a heated disassociative state by his manager's reprimand, and that the killing of the victim was the result of appellant's emotional mindset. *Id.* at 19–21. Appellant contends that the lower court should have provided a jury instruction on voluntary manslaughter. *Id.* We disagree.

¶ 15 With regard to the standard of review of this claim, we are mindful that the nature of the court's instructions to the jury is "within the discretion of the court, so long as the court accurately instructs the jury on the appropriate legal principles involved." *Commonwealth v. Hartey*, 424 Pa.Super. 29, 621 A.2d 1023, 1028 (1993). Our main concern is "that the charge clearly, adequately, and accurately presents the law to the jury for its consideration." *Commonwealth v. Collins*, 810 A.2d 698, 701 (Pa.Super.2002).

¶ 16 As the trial judge noted, under Pennsylvania law, a homicide defendant is entitled to a jury instruction on voluntary manslaughter only "where the offense has been made an issue in the case and where the evidence would reasonably support such a verdict." *Commonwealth v. Thomas*, 552 Pa. 621, 717 A.2d 468, 478

(1998). Voluntary manslaughter is an appropriate verdict for "heat of passion" killings, where, "at the time of the killing, [the defendant] acted under sudden and intense passion [due to] serious provocation by the victim." *Id.* at 477. The test for provocation is "whether a reasonable [person] confronted by the same series of events, would become impassioned to the extent that his mind would be incapable of cool reflection." *Commonwealth v. Galloway,* 336 Pa.Super. 225, 485 A.2d 776, 783 (1984).

¶ 17 Here, the lower court properly instructed the jury with regard to the applicable law. Appellant failed to identify any evidence to show provocation (beyond the victim's proper reprimand of appellant due to appellant's reckless conduct with regard to a customer's vehicle). Additionally, appellant was provided time to cool off, but instead, retrieved his handgun, returned to the office, and killed the victim. The record is devoid of any evidence of provocation. Clearly, an instruction on voluntary manslaughter was neither supported by the evidence nor warranted. The lower court did not err in refusing appellant's desired instruction.

¶ 18 Fourth, appellant claims that the lower court erred in failing to instruct the jury with regard to appellant's reputation for peacefulness. Appellant's Brief, at 5, 14, 16–18. Appellant argues that, while the underlying facts of the matter were not disputed, evidence of appellant's general peaceful character could have rebutted the Commonwealth's evidence with regard to appellant's specific intent to kill. *Id.* at 16–18. Appellant contends that the jury, if presented with appellant's character evidence, could have rendered a verdict of not guilty, or a verdict of a lesser degree of murder. *Id.* We disagree.

¶ 19 With regard to the admissibility of evidence at trial, our standard of review is limited to determining whether the trial judge abused his discretion. *See Commonwealth v. Friend,* 717 A.2d 568 (Pa.Super.1998). And, as noted above, the nature of the court's instructions to the jury is "within the discretion of the court, so long as the court accurately instructs the jury on the appropriate legal principles involved." *Hartey,* 621 A.2d at 1028.

¶ 20 As the lower court stated, Pennsylvania law is clear that "while character evidence is admissible to prove that a defendant did not commit the charged crime, it is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity." *Commonwealth v. Gwynn,* 555 Pa. 86, 723 A.2d 143, 151 (1998). In this regard, "the diminished capacity defense concedes criminal liability for murder but asserts that appellant lacked the capacity to form the specific intent to kill." *Id.* Therefore, "good character evidence [is] not admissible to support a diminished capacity defense." *Id.*

¶ 21 Here, the lower court properly determined that appellant's character evidence was inadmissible, and the court correctly concluded that appellant was not entitled to a jury instruction with regard to appellant's alleged good character. No evidence was offered at trial with regard to appellant's reputation in the community or character for peacefulness; therefore, no grounds existed for a subsequent jury charge. Such character evidence would have nevertheless been improper here because appellant conceded that he had shot and killed the victim, but claimed diminished capacity (admitting criminal liability for the murder, but arguing that he lacked the capacity to form the specific intent to kill). As character evidence is not admissible to support a diminished capacity defense, the lower court did not err with regard to the admissibility of the character evidence or

with regard to the lack of a jury instruction reflecting appellant's character for peacefulness.

¶ 22 Finally, appellant claims that the lower court erred in failing to allow a defense witness to testify to the witness's own prior life experiences. Appellant's Brief, at 5, 15, 22. Appellant argues that the witness, Charlie Kien, grew up with appellant in Southeast Asia, and that Mr. Kien could have provided insight on the living conditions in that area. *Id.* at 22. Appellant contends that appellant was therefore denied a fair trial and due process of law. *Id.* We disagree.

¶ 23 As noted with regard to the admissibility of evidence at trial, our standard of review is limited to determining whether the trial judge abused his discretion. *See Commonwealth v. Friend,* 717 A.2d 568 (Pa.Super.1998).

¶ 24 In order for evidence to be admissible at trial, the evidence must be competent and relevant. *See Commonwealth v. Enders,* 407 Pa.Super. 201, 595 A.2d 600 (1991). Evidence is relevant when "the inference sought to be raised by the evidence bears upon a matter in issue in the case and ... whether the evidence renders the desired inference more probable than it would be without the evidence." *Id.* at 603.

¶ 25 Here, the lower court properly limited the defense witness's testimony. While appellant's defense theory rested in part upon appellant's living conditions as a young child in Southeast Asia, the testimony of appellant's witness concerning the witness's own prior life experiences were clearly irrelevant. As the lower court additionally stated, the witness's own experiences in Southeast Asia, decades ago, simply had no probative value in appellant's murder case. The lower court did not err

or abuse its discretion in limiting the testimony of appellant's witness.

¶ 26 Judgment of sentence AFFIRMED.