J-S56039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH SAITA, | |
| Appellant | No. 2140 MDA 2014 |

Appeal from the Judgment of Sentence April 23, 2014
in the Court of Common Pleas of Lackawanna County
Criminal Division at No.: CP-35-CR-0002364-2013

BEFORE:  SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 12, 2015**

Appellant, Joseph Saita, appeals from the judgment of sentence imposed following his jury conviction of firearm not to be carried without a license, in violation of 18 § 6106(a)(2).[1]  We affirm on the basis of the trial court's opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] In relevant part, the statute provides:

> A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106(a)(2).

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them at length. For the convenience of the reader we note that Appellant, a tow truck operator, was stopped by police for various vehicle code violations not at issue here. He was placed under arrest when it was discovered he had an outstanding warrant. While Appellant was being processed after arrest, the officers found that he was carrying a firearm, a Kel-Tec .380 handgun, concealed in a holster under his sweatshirt. Appellant did not possess a valid license for the firearm.

A jury convicted him of firearm not to be carried without a license on February 11, 2014. Appellant timely appealed following the denial of his post-sentence motions.[2]

Appellant raises four questions for our review:

> I. Whether the [trial] court erred in denying [A]ppellant's request for more specific jury instructions relating to concealed carry laws?

> II. Whether the [trial] court erred in permitting a lay witness to testify on expert matters despite the fact that [A]ppellant was never on notice of the Commonwealth's intent to call an expert witness?

> III. Whether the [trial] court erred in permitting lay witnesses to testify to and opine on the applicable law?

---

[2] Appellant filed a statement of errors on January 2, 2015. *See* Pa.R.A.P. 1925(b). The trial court filed a Rule 1925(a) opinion on March 12, 2015. *See* Pa.R.A.P. 1925(a).

IV. Whether 18 Pa.C.S.A. § 6106 is unconstitutionally vague as applied to the facts of this case?

(Appellant's Brief, at 7).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the issues Appellant has raised on appeal. The trial court opinion properly disposes of the questions presented. (**See** Trial Court Opinion, 3/12/15, at 4-25) (concluding: (1) trial court properly exercised its discretion in declining Appellant's request for more specific jury instructions on the firearms not to be carried without a license statute (18 Pa.C.S.A. § 6106); (2) trial court properly permitted police officer to testify about operability of weapon at issue in rebuttal to challenge by defense counsel to operability of weapon; (3) trial court properly permitted a sheriff's deputy to testify about the law pertaining to obtaining a license to carry a concealed weapon in Pennsylvania, which was within the scope of her official duties, where the trial court instructed the jury four separate times that it was the role of the trial court alone to provide the applicable law to the jury; and (4) 18 Pa.C.S.A. § 6106 was not unconstitutionally vague). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/12/2015</u>

CLERK OF JUDICIAL
RECORDS CRIMINAL
DIVISION

2015 MAR 12  PM 2 34

| COM.OF PENNSYLVANIA | : IN THE COURT COMMON PLEAS |
|---|---|
| | : OF LACKAWANNA COUNTY |
| | : |
| V. | : |
| | : CRIMINAL DIVISION |
| JOSEPH SAITA | : |
| Defendant | : 2013 CR 2364 |

**OPINION PURSUANT TO Pa. R. A. P. 1925(a)**

Bisignani Moyle, J.

## I.     INTRODUCTION AND PROCEDURAL HISTORY

The instant action arises out of the above-referenced Defendant's Motion for Post Trial Relief and/or Reconsideration. Defendant Joseph Saita (hereinafter "Defendant") has appealed various rulings made by this Court during the course of his trial, as a result of which he was convicted of one (1) count of Carrying a Firearm Without a License in violation of Title 18 § 6106 §§ A2. On April 23, 2014, this Court sentenced the Defendant to serve a sentence of one (1) year probation.

The Defendant then filed a number of post-sentence motions. On May 5, 2014 the Defendant filed a Motion for Judgment of Acquittal and/or a New Trial pursuant to Pa.R.Criminal.P 720. On November 25, 2014 this Court denied the Motion for Judgment of Acquittal and/or a New Trial. Following this, the Defendant filed a Notice of Appeal to the Superior Court on December 16, 2014 and a Statement of Matters Complained of on Appeal on January 2, 2015, pursuant to Pa.R.A.P. 1925(b). This Court will briefly address each issue as required under Pa.R.A.P. 1925(a).

1

## II.     FACTUAL BACKGROUND

The evidence offered at trial demonstrated as follows:

On October 19, 2013 Corporal McDonald and Officer Golden of the Scranton Police Department were assigned to work the nighttime hours to detect and deter criminal activity within the City of Scranton. N.T. 2/10/14 at p. 6.  Specifically, the two Officers were "aggressively enforcing traffic violations, any other type of crimes that we may have stumbled across while out there." Id. While on patrol, the Officers were primarily focusing on the downtown area. Id. at p.7.

The Officers observed a flatbed tow truck on Mulberry Street heading due west. Id. The Officers noticed the truck had several marker lights out, a registration light out, and a malfunctioning left lower turn signal light out. Id. The Officers initiated a traffic stop while on the 400 block of Mulberry Street. Id.  They identified the driver as Joseph Saita. Id. The Officers then conducted a standard license and warrants check on the driver. Id. The standard check revealed the Defendant's driver's license was valid.  It also revealed that the Defendant had no criminal warrants. Id. at p. 9. However, Corporal McDonald requested a further check for warrants at Police Headquarters. He testified the second check revealed the Defendant had a "summary warrant for a traffic violation for $171.00 out of Magistrate Ware's office." Id.  The Officers issued a citation for the lighting violations and for a heat shield violation. Id. at p. 10.  The Officers then informed the Defendant of the warrant and placed him under arrest. Id.

He was handcuffed and a pat-down search was conducted by Officer Golden. Id. at p. 11. During the pat-down, Officer Golden located a pill bottle in the

2

Defendant's pocket. Id. at p.12. Officer Golden noticed that there were different types of pills in the bottle. Id. at p. 41-42. The pills were later determined to be Suboxone and Xanax mixed within the same prescription medication bottle. Id. An additional charge of unlawfully possessing Xanax was filed against the Defendant. Id. at 21.

Corporal McDonald testified Officer Benke, the wagon officer, arrived on scene to transport the Defendant. Id. at p.11. He transported Mr. Saita to the Lackawanna County Processing Center which is located in the basement of the Lackawanna County Courthouse. Id. at p.11-12. Officer Golden testified that it is the wagon officer's responsibility to again search an individual prior to placing him in the transportation vehicle. Id. at p.42. Officer Golden and Corporal McDonald remained with the Defendant's vehicle, the Officers had the vehicle towed because it was obstructing the roadway. Id. Once the vehicle was towed the officers cleared the scene and went to headquarters to prepare paperwork and enter the pills into evidence. Id. at p. 12.

While at Headquarters, the Officers were informed by Officer Benke that the Defendant had a firearm concealed on his person when he was brought into the Processing Center. Id. at p. 13. The gun was found as the Defendant was being patted down by Lackawanna County Sheriff's Deputies. Id. It was located underneath the Defendant's hooded sweatshirt. Id. at p. 13-14. Corporal McDonald testified that his research revealed the Defendant did not have a valid license to carry a concealed weapon. Id. at p. 14. Corporal McDonald further testified that the Defendant never mentioned the firearm during the traffic stop and subsequent arrest.

3

Id. at p.14. Corporal McDonald added the additional charges against the Defendant for a Firearm Not to be Carried Without a License. Id.

## III. DISCUSSION- MATTERS COMPLAINED OF ON APPEAL PURSUANT TO 1925(B)

### A. JURY INSTRUCTIONS

The first three averments made by the Defendant concern the jury instructions given before deliberations began. In the Defendant's Statement of Matters Complained of on Appeal pursuant to Rule 1925(B), the Defendant specifically averred in his first three claims that the Court erred by instructing the jury as requested by the Defendant.[1] The Defendant requested the jury be instructed as follows,

1. Ladies and Gentleman, you have heard testimony in this matter that the Defendant possessed a firearm. However, it is not illegal per se to simply possess a firearm in public. In Pennsylvania, there is a right to carry a firearm in public so long as that firearm is not concealed.

As I have already instructed you, Pennsylvania law only prohibits carrying a concealed firearm without a license and carrying a concealed firearm without a license and carrying a firearm in a vehicle without a license. It is undisputed that Defendant did not possess a license to carry a concealed weapon. Nevertheless, there are several exceptions to the general rule which allow a person to carry a concealed weapon or carry a weapon in a vehicle without a license.

Specifically, in this case, the Defendant has claimed that two exceptions apply. First, Defendant claims that he is exempt from the rule because he was transporting his firearm between work and home. Under Pennsylvania law, a person is exempt from the prohibition on carrying a concealed weapon if he is carrying a firearm which (1) is not loaded, (2) is in a secured wrapper, (3) while "moving from one place of

---

[1] This was erroneously pled by the Defendant. On His Statement of Matters Complained of on Appeal , the Defendant stated that the trial court erred in instructing the jury as requested by the Defendant. On the contrary, the Court did not use the language cited in Defendant's Matters Complained of on Appeal. The Defendant asked the Court to give the requested jury instructions but the Court declined. This Court will address the errors alleged accordingly.

abode or business to another." Therefore, if you find that the firearm which Defendant was carrying was not loaded, was in a secure wrapper, and was being carried between Defendant's home and place of business, you must return a verdict of not guilty.

Secondly, Defendant claims that he is exempt from the rule because he worked in a business which required him to protect the property of others. Specifically, Pennsylvania Law provided an exception for (1) agents, and employees; (2) of business firms; (3) whose duties require them to protect valuables and other property in the discharge of such duties. If you find these elements to be satisfied, you must return a verdict of not guilty.

2. Ladies and Gentlemen, you have heard testimony in this matter that the Defendant possessed a firearm. If you find that the Defendant did indeed possess a firearm, your inquiry in this matter is not at an end. In order for the Defendant to be criminally liable, he must have possessed a firearm that was "operable or capable of being converted into an object that could fire a shot." "An operable firearm may be said to be under the control of the alleged actor even though it is a malfunctioning assembled firearm or a disassembled firearm, if the alleged actor has under his control the means to convert the inoperable firearm into an operable firearm." Therefore, if you find that the firearm which Defendant is alleged to have carried was inoperable and the components to make it operable were not in the control of and readily available to the Defendant at the time of his arrest, you must return a verdict of not guilty.

3. Ladies and Gentleman, in your deliberations in this matter you should consider the policy behind the prohibition of the Firearms Law and whether Defendant's conduct falls within the conduct sought to be sanctioned by this policy. Specifically, the statute at issue has "the aim of discouraging the carrying of unlicensed weapons because of the inherent threat to human life and public peace, the primary thrust of the statute being to prohibit a practice evil in its tendencies. Whether the Defendant actually concealed a firearm "depends on the particular circumstances present in each case" and is a factual question for you the jury to evaluate given the specific facts of this case. If you find that Defendant's conduct is not the type to be prevented by this policy, you may choose to consider this in your determination as to whether the element of concealment has been proved beyond a reasonable doubt.

In Pennsylvania, when reviewing jury instructions for reversible error, an appellate court must read and consider the charge as a whole. Commonwealth v. Dietterick, 631 A.2d 1347, 1352 (Pa.Super.1993), appeal denied, 645 A.2d 1312 (Pa.1994). The Court shall "uphold an instruction if it adequately and accurately reflects the law and is sufficient to guide the jury through its deliberations." Commonwealth v. Ahlborn, 657 A.2d 518, 520 (Pa.1995). "Error will not be predicated on isolated excerpts. Instead, it is the general effect of the charge that controls." Commonwealth v. Zewe, 663 A.2d 195, 201 (Pa.Super.1995), appeal denied, 675 A.2d 1248 (Pa.1996); Commonwealth v. Anderson, 600 A.2d 577, 578 (Pa.Super.1991), appeal denied, 612 A.2d 983 (Pa.1992). The Superior Court has stated "an erroneous charge warrants the grant of a new trial unless the reviewing court is convinced beyond a reasonable doubt that the error is harmless." Dietterick 631 A.2d at 1352. "The nature of a court's instructions to the jury is "within the discretion of the court, so long as the court accurately instructs the jury on the appropriate legal principles involved." Commonwealth v. Kim, 888 A.2d 847, 852 (Pa.Super.2005) (quoting Commonwealth v. Hartey, 621 A.2d 1023, 1028 (Pa.Super.1993)). The jury instruction must be read so "that the charge clearly, adequately, and accurately presents the law to the jury for its consideration." Id. (quoting Commonwealth v. Collins, 810 A.2d 698, 701 (Pa.Super.2002)). The jury charge must be reviewed "not in isolated portions but as a whole to ascertain whether it fairly conveys the required legal principles at issue." Commonwealth v. McClendon, 874 A.2d 1223, 1232 (Pa.Super.2005).

6

This Court will address each requested jury instruction separately. The first requested instruction concerns two (2) exceptions to the prohibition of carrying a concealed weapon. Specifically, the first exception states in pertinent part "any person while carrying a firearm which is not loaded and is in a secure wrapper, from the place of purchase to his home or place of business..." 18 Pa. C.S.A. § 6106 (b)(8). The instruction requested was not supported by any evidence and therefore was not applicable. Kim, 888 A.2d. at 853. The Defendant himself testified the firearm was in a holster on his waistband and not in a secure wrapper. N.T. 2/11/14 p.70. Additionally, the Defendant testified he was carrying the weapon, in a holster, as he was performing his job, towing vehicles in Scranton. Id. The Defendant's own testimony reveals that his conduct fails to satisfy the requirement of the exception. More specifically, the weapon was not in a secure wrapper and he carried it as he conducted his business from his tow truck and ultimately into the Processing Center located in the Courthouse, not from his place of purchase to his home or place of business, etc. Id. Clearly none of the requirements for this exception have been satisfied. In light of the totality of the evidence, this instruction was properly rejected as not supported by the testimony.

The second portion of this instruction addressed the business exception outlined in 18 Pa. C.S.A. § 6106 (b)(6). It states in pertinent part "agents, messengers and other employees of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables, and other property in the discharge of such duties..." 18 Pa. C.S.A. § 6106 (b)(6). The Defendant

asserts he falls into the exception because his employment as a tow truck operator is contemplated by the statute, specifically he asserts as a tow truck operator he is responsible for the protections of the property of others. N.T. 2/10/14 at p.71. An analysis of the employees exempted, however reveals tow truck drivers are not similarly situated. The Defendant testified that he is the owner/operator of Direct Towing and Recovery. N.T. 2/11/14 at p. 68. He testified his customers include business owners and private individuals who own property in the area. Id at p.69. The customers contract the services of the Defendant to keep unwanted vehicles off their property. Id. He testified the reason he carries a firearm is because "I'm in the bad parts of the city. And that's why I carry that gun in the open as a deterrent, not once ever had bullets in the gun, except for when I was target shooting." Id. at p. 70.

The Superior Court addressed this exception in Commonwealth v. Walton, 529 A.2d.15, 17 (Pa.Super.1987). Specifically, the Court discussed the applicability of the exception to certain occupations. Id. The Walton Court reasoned the exception does not extend to all employees who hold or handle valuable property of another. Id. Rather, the Walton Court stated "we interpret the language to be restrictive. These words limit the applicability of the exception to agents or employees who are hired for the primary purpose of and whose duties are principally related to the protection of money, valuables, and property. The exception includes, but is not necessarily limited to, persons employed as guards, watchmen, protective patrols, and private detectives, who are required in the discharge of their duties to protect money, valuables, and

8

property." Id. The Walton Court also stated "the Commonwealth showed that appellant, a cab driver, possessed an unlicensed, operable firearm while driving a taxicab in Philadelphia. The burden of proof then shifted to appellant to come forward with evidence that he was exempt from the licensing requirement of the statute because he was an employee of a common carrier whose duties required him to protect moneys, valuables, or other property in the discharge of his duties." Id.

"The provisions of 18 Pa.C.S.A. § 6106(b)(6) do not exempt all agents or employees who handle money or work with instrumentalities owned by their employers from the statutory proscription against carrying a firearm without a license." Id. The Walton Court further stated "to adopt the general interpretation advanced by appellant would be to sanction the carrying of firearms without a license by all types of employees, including waiters and waitresses, store clerks, bank tellers, train conductors, bus drivers, and theater cashiers. It would allow employees to carry firearms without licenses on occasions when an employer could not." Id.

Clearly the Defendant's self-employment as a tow truck operator does not meet the requirements set forth in Walton for a number of reasons. First, Defendant is the owner of the business and not an "agent, messenger, or employee." Second, the Defendant asserts he falls into the exception because he is responsible for protecting the vehicles he has towed. N.T. 2/11/14 at p.71. The statute excepts in clear unambiguous language those "whose duties require them to protect moneys, valuables and other property in the discharge of such

9

duties." 18 Pa.C.S. § 6106(b)(6). The Walton court utilized the principles of agency to conclude "agents are not specifically required in the discharge of their duties to protect money or property against robbers and other assailants." Id. In this case the Defendant is hired by property owners to tow illegally parked vehicles from their property. N.T. 2/11/14 at p. 68-69. He asserts he is required to protect the vehicles that he tows. Id. However, he is not hired or contracted by the vehicle owners, nor is he their agent. As such his argument must fail.

The second requested instruction addressed the "operability of the firearm." This Court gave the Pennsylvania Standard Jury Instruction for § 6106 which included the following language regarding operability: "the specific object charged must be either operable, that is capable of firing a projectile, or, if inoperable, that the Defendant had under his control the means to convert the object into one capable of firing a shot." N.T. 2/11/14 p.239. As such, the requested jury instruction was substantially similar to the delivered charge and therefore was inappropriate because if given would have been cumulative and unnecessary. The Court has discretion and may properly refuse a requested instruction when the substance of that request has already been given in either a general or specific charge. Zewe, 663 A.2d at 201. Furthermore, the Superior Court has stated "With regard to the standard of review of this claim, we are mindful that the nature of the court's instructions to the jury is "within the discretion of the court, so long as the court accurately instructs the jury on the appropriate legal principles involved." Commonwealth v. Hartey, 621 A.2d

1023, 1028 (Pa.Super.1993). As such, the requested instruction was not appropriate.

The third and final requested instruction addressed the policy behind the prohibition (i.e., was the Defendant's conduct the type sought to be prevented by the legislative intent?) The Defendant cited Commonwealth v. Butler, 150 A.2d. 172 (Pa.Super.1959) in support of his position. The issue in Butler was whether a partially visible handgun was a "concealed" firearm pursuant to the statute. Id. at 172. In its analysis, the Butler court addressed the legislative intent by stating "the evil sought to be corrected by the enactment of the Uniform Firearms Act is a serious one, and courts owe a duty to the public to see to it that the legislative intent is not thwarted by a construction which is unreasonably rigid and inflexible." Id. Additionally, the Butler court noted "the applicable statute is viewed as having the aim of discouraging the carrying of unlicensed weapons because of the inherent threat to human life and public peace, the primary thrust of the statute being to prohibit a practice evil in its tendencies." Finally the Court in Butler stated "penal provisions are to be strictly construed." Continuing, the Butler court stated "the Courts have a duty to ascertain and effectuate the intention of the legislature." Id. Turning to § 6106, the statute in clear language prohibits an individual from carrying a concealed firearm "on or about his person... without a valid and lawfully issued license..." The legislature carved out several specific exceptions, none of which apply in this case. A careful review of this wording reveals the legislature's intent. The legislature intended to prohibit any individual, who did

11

not satisfy one of the many exceptions from carrying a concealed firearm without a license. It could not be more clear that the Defendant's requested instruction is not appropriate because his behavior is the exact behavior sought to be prohibited by the legislation, even absent an evil intent on his part.

The jury instructions given by this Court accurately reflected the law and were sufficient to guide the jury in its deliberation.

## B. JUDGMENT OF ACQUITTAL/ SUFFICIENCY OF THE EVIDENCE

The Defendant also avers that the Court erred in failing to enter a Judgment of Acquittal because the verdict was not supported by sufficient evidence. Specifically, he alleges the Commonwealth failed to present sufficient evidence that he carried a concealed weapon, that he did not possess the weapon in his place of business, and that the evidence was insufficient to overcome two exceptions to 18 Pa. C.S.A. § 6106 (b). Thus, he asserts the Court should have entered a judgment of not guilty. This Court will address each issue separately.

Regarding the sufficiency of the evidence argument advanced by the Defendant, the Court is required to evaluate the presence or absence "of that quantum of evidence necessary to establish the elements of the crime." Commonwealth v. Bigelow, 611 A.2d 301, 303 (Pa.Super.1992). See also: Commonwealth v. Meadows, 369 A.2d 1266, 1268 (Pa.1977), Commonwealth v. Yapsuga, 535 A.2d 187, 188 (Pa.Super.1987). In order to determine the legal sufficiency of evidence supporting a jury's verdict of guilty, the Court

12

must "view the evidence in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. The Court must then determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged has been established beyond a reasonable doubt." Commonwealth v. Aulisio, 522 A.2d 1075, 1079 (Pa.1987); Commonwealth v. Smith, 568 A.2d 600, 602 (Pa.1989); Commonwealth v. Hardcastle, 546 A.2d 1101, 1105 (Pa.1988), cert. denied, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). Therefore, "It is the function of the jury to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. The jury is free to believe all, part, or none of the evidence introduced at trial." Commonwealth v. Guest, 456 A.2d 1345, 1347 (Pa.1983); Commonwealth v. Rose, 344 A.2d 824, 826 (Pa.1975); Commonwealth v. Verdekal, 506 A.2d 415, 419 (Pa.Super.1986). The facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." Commonwealth v. Sullivan, 371 A.2d 468, 478 (Pa.1977), quoting Commonwealth v. Libonati, 31 A.2d 95, 97 (Pa.1943); Commonwealth v. Kravitz, 161 A.2d 861, 869 (Pa.1960), cert. denied, 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961).

13

In order to satisfy the elements of the crime of Carrying a Firearm Without a License, the Commonwealth must satisfy the following statutory requirements:

> **Firearms Not to be Carried Without a License**
> (a) <u>Offense defined</u>. (1) Any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree. (2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa. C.S.A. § 6106 (a).

The Defendant alleges the testimony was insufficient to establish that he "concealed" a weapon. Regarding the first element of the offense, which is concealment, the Commonwealth presented the testimony of three (3) Scranton Police Officers and one (1) Sheriff's Deputy each who testified they did not observe the firearm on the Defendant's waistband, despite the Defendant's self-serving assertions that it was visibly displayed and not concealed. N.T. 2/10/14 pgs.15, 44, 63, 105, N.T. 2/11/14 p. 70-71. Applying the above referenced standard set forth in <u>Commonwealth v. Guest</u>, the jury as trier of fact, was free to accept or reject the testimony of the four law enforcement officers who testified they did not see the weapon. Additionally, the jury was free to accept or reject the Defendant's testimony that the gun was visible and not concealed.

14

As such, the Defendant's argument must fail. Turning to the second and third elements of the offense, the Commonwealth called Detective Christopher Kolcharno who demonstrated for the jurors how the firearm operates and that the firearm in question is in fact operable. N.T. 2-11-14 at p.13-14. Finally, Corporal McDonald and Deputy Sheriff Booth testified the Defendant did not possess a permit to carry a concealed firearm. N.T. 2/10/14 at pgs.14, 82-85. This last element was stipulated by the Defendant. Id. at p. 89.

This Court is satisfied the evidence presented by the Commonwealth was sufficient to overcome the assertion that the verdict was not supported by such evidence. The evidence presented by the Commonwealth, through corroborated witness testimony and expert testimony evidence, clearly established each and every element of each of the offense.

Next, the Defendant argues the Commonwealth failed to present sufficient evidence to prove that he was not at his place of business and that business exception to 18 Pa. C.S.A. 6106 (b)(8) applies. Since the legal analysis is the same for both arguments we will address them simultaneously. First, Defendant claims that he is exempt from the prohibition because he was transporting his firearm between work and home. The first exception states, "any person while carrying a firearm which is not loaded and is in a secure wrapper and he is carrying it from the place of purchase to his home or place of business, or to a place of repair, sale or appraisal or back to his home or place of business, or in moving from one place of abode or business to another or

15

from his home to a vacation or recreational home or dwelling or back…" 18 Pa. C.S.A. 6106 (b)(8).

Clearly, this exception clearly does not apply. The testimony, including the Defendant's own testimony, established the firearm was in a holster on his waistband, when brought into the Processing Center located on the first floor of the Courthouse. N.T. 2/10/14 at p. 104-105. Even by the Defendant's own testimony the firearm was not in a 'secure wrapper.' N.T. 2/11/14 at p.79. Additionally, he wasn't carrying the firearm from "his place of purchase, to his place of business or to a place of repair." The Defendant asserts that his "place of business" is his tow truck. Therefore he alleges is permitted to carry his firearm without a license in his truck, because of the business exception. To interpret the language of 18 Pa. C.S.A. 6106 (b)(8) to include his vehicle in the definition of "place of business" would extend the exception to countless individuals who work out of their car. Walton, 529 A.2d. at 17. This Court does not accept the Defendant's interpretation and to adopt the general interpretation advanced by him would be to sanction the carrying of firearms without a license by all types of employees, "including cab drivers, limousine drivers, ambulance drivers, traveling salesman, etc." Id. Therefore, the Defendant's argument must fail.

Second, Defendant argues that the Court should grant his request for a Judgment of Acquittal because he is permitted to carry a concealed weapon pursuant to the exception outlined in 18 Pa. C.S.A. 6106 (b)(6) . Specifically, the statute provides an exception for "agents, messengers and other employees

16

of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables and other property in the discharge of such duties." 18 Pa. C.S.A. 6106 (b)(6). This Court has addressed this argument in the preceding section regarding the Defendant's requested jury instruction. For the reasons stated previously the Defendant's argument must fail.

## C. CONSTITUTIONALITY

Next, the Defendant challenges the constitutionality of 18 Pa. C.S.A. § 6106. The Pennsylvania Supreme Court has held that "a statute may be deemed to be unconstitutionally vague if it fails in its definiteness or adequacy of statutory expression. The "void-for-vagueness" doctrine implicates due process notions that a statute must provide reasonable standards by which a person may gauge his future conduct, i.e., notice and warning." Smith v. Goguen, 415 U.S. 566, 572, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); Commonwealth v. Heinbaugh, 354 A.2d 244, 246 (Pa. 1976). Specifically, with respect to a penal statute, the Pennsylvania Supreme Court and the United States Supreme Court have found that in order for a statute to withstand constitutional scrutiny, based upon a challenge of vagueness, a criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357. Commonwealth v. Mayfield, 832 A.2d 418, 422 (2003); Commonwealth v. Mikulan, 470 A.2d 1339, 1342 (1983), see also Heinbaugh, 354 A.2d at 246.

17

Reviewing courts have "looked at the statutory language itself, and have interpreted that language, to resolve the question of vagueness."; Mayfield, 832 A.2d at 422; Commonwealth v. Cotto, 753 A.2d 217, 220 (Pa.2000). In doing so, however, "our Court has cautioned that a statute is not to be tested against paradigms of legislative draftsmanship," Heinbaugh, 354 A.2d at 246, and "thus, will not be declared unconstitutionally vague simply because the Legislature could have "chosen 'clear and more precise language' ...." Id. In other cases "the Courts have also looked to the legislative history and the purpose in enacting a statute in attempting to discern the constitutionality of the statute." See United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, 413 U.S. 548, 570–575, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); Cotto, 753 A.2d at 221.

The statute, in clear language, defines the criminal offense with sufficient definiteness, so that ordinary people can understand what conduct is prohibited (i.e. the prohibition of carrying a concealed firearm without a license) and in a manner that does not encourage arbitrary and discriminatory enforcement. The Defendant had a firearm concealed on his person when he was brought into the Processing Center after his arrest. Three (3) Scranton Police Officers and a Deputy Sheriff failed to observe the firearm during their encounter with the Defendant. The gun was found as the Defendant was being patted down by Deputy Rinaldi. N.T. 2/10/14 pgs.15, 44, 63, 105. It was located underneath the Defendant's hooded sweatshirt. The Defendant did not have a permit to carry a concealed firearm. The conduct is clearly prohibited

18

and it is so in a manner that does not encourage arbitrary and discriminatory enforcement.

## D. WITNESSES

The Defendant alleges that the Court erred in allowing Detective Christopher Kolcharno to testify as to matters reserved for expert witnesses. The Defendant also avers that the Court erred in allowing Lackawanna County Sheriff's Deputy Jenna Booth to testify as to the applicable law regarding firearms in Pennsylvania. This Court will address each averment separately.

Detective Kolcharno was not originally on the Commonwealth's witness list. N.T. 2/11/14 p.5-6. The Commonwealth announced he would be called to testify after the Defense raised the issue of operability during cross-examination of Commonwealth witnesses on the first day of trial. Id. at p.4. Specifically, the following exchange took place during cross-examination of Corporal McDonald:

Q: Couldn't fire it, correct?

A: If there was one in the- you don't need a magazine in the weapon to fire it. There could be one in the chamber.

Q: Did you check the weapon?

A: I never saw the weapon because it was concealed on him at the time of the traffic stop—the incident. I found out later that he brought the concealed weapon into the Processing Center where it was found by the Deputies.

19

Q: You've had three months before you sat here today. Did you ever test fire the weapon?

A: No.

Q: And you indicate, well, you could fire the gun even without a magazine. There's a certain guns that you can't do that with, correct?

A: I'm not a weapon expert. I couldn't tell you.

Q: All right. So the condition that you found it in his person, you don't know that it was capable of discharging anything?

A: It looked operable.

Q: That's it and he's here.

A: Right.

Q: Facing a charge. That's all you could say. That's the best evidence that you have that it might have been operable.

A: The best evidence I have is I have a weapon. The law doesn't say if it's loaded or unloaded. It just says that you have a weapon on your person concealed which he did.

Q: That's not what the law states. That's not what the law states.

A: Okay.

N.T. 2/10/14 p.30-31.

In response to the above exchange, the Commonwealth sought to call Detective Christopher Kolcharno as a witness for the purpose of demonstrating

20

the firearm's operability. Prior to Detective Kolcharno's testimony, an objection was raised by the Defense. The Defendant objected to the testimony on the grounds that Detective Kolcharno's testimony constituted matters reserved for experts. N.T. 2/11/14 at p.5-6. Additionally, the Defense argued the testimony was inadmissible because the Commonwealth failed to provide sufficient notice and/or an expert report in compliance with the rules of criminal procedure. A lengthy sidebar conference was held in which all of the issues surrounding Detective Kolcharno's testimony were discussed. Id. at p. 1-19, 27-37, 55-59, 109-111. The Court allowed the Commonwealth to present the testimony and gave the Defendant the option of calling his own witness to testify about the operability of the firearm. The defense chose not to call a witness. N.T. 2/11/14 at p.37-38, 109-111.

This Court finds Detective Kolcharno's testimony was proper because Defense counsel raised the operability of the firearm as a possible defense during cross-examination of Commonwealth witnesses. The Pennsylvania Superior Court has addressed the issue of operability in Commonwealth v. Horshaw, 346 A.2d. 340 (Pa. Super.1975). In Horshaw, the Superior Court ruled the Commonwealth "need not show the weapon to have been operable until the evidence of its operability has been introduced into evidence." Horshaw, 346 A.2d at 340, citing Commonwealth v. Layton, 307 A.2d. 843 (Pa.Super.1973). Detective Kolcharno during his testimony demonstrated to the jury how the firearm operated. N.T. 2/11/14 at pgs.38-42. He explained the operation and functionality of a pistol magazine. Id. On cross-examination the

21

Defense questioned the Detective regarding the weapons ability to operate without a magazine. Id. at p.42-48. He testified that the firearm is capable of discharging a round with or without a magazine. Id. at p.46.

The Court's analysis into the admissibility of Detective Kolcharno's testimony must begin by reviewing the Pennsylvania Rules of Evidence. Pa.R.E. 401 states "evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action. Whether evidence has a tendency to make a given fact more or less probable is to be determined by the court in the light of reason, experience, scientific principles and the other testimony offered in the case. The relevance of proposed evidence may be dependent on evidence not yet of record." Pa.R.E. Rule 401.

Additionally, "a trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." Commonwealth v. Cook, 676 A.2d 639, 647 (Pa.1996). A ruling admitting evidence "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." Commonwealth v. Minich, 4 A.3d 1063, 1068 (Pa.Super.2010). Once the Defense raised a challenge to the operability of the firearm, the Commonwealth was required, per Horshaw to present evidence of the firearm's operability. As such the evidence was clearly admissible pursuant to Pa. R.E. 401 and Horshaw.

22

Next this Court must consider whether Detective Kolcharno should have been permitted to testify to matters reserved for expert witnesses. Pennsylvania Rule of Evidence 702 governs expert witness testimony, it states:

> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E., Rule 702.

Pennsylvania Courts have set the standard of review by stating "generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." Commonwealth v. Brown, 596 A.2d 840, 842 (Pa.Super.1991). An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice. Commonwealth v. Watson, 945 A.2d 174, 176. (Pa.Super.2008). Where the evidentiary question involves a discretionary ruling, the reviewing Court's scope of review is plenary, therefore the appellate court may review the entire record in making its decision. Commonwealth v. Delbridge, 859 A.2d 1254, 1257 (Pa.2004).

Defense counsel raised operability of the firearm as a possible defense to the charge of Carrying a Firearm Without a License during cross-examination. N.T. 2/10/14 p.30-31. The Commonwealth was then required to prove the firearm was operable thus making Detective Kolcharno's testimony relevant. Horshaw, 346 A.2d at 340. Detective Kolcharno testified he is a Detective for the Lackawanna County District Attorney's Office and is a

23

firearms instructor for his department. N.T. 2/11/14 p.39. Additionally, he is employed privately as a firearms instructor for the Commonwealth of Pennsylvania. Id. He has been a Detective since June 2001. Id. This Court finds because of his employment, he possessed specialized knowledge beyond that of a lay person, as such he was properly permitted to testify as an expert. Furthermore, this Court finds the operation of the firearm, a Kel-Tec Model 3AT, which is a .380 caliber semiautomatic pistol, "is beyond that possessed by a layperson." Pa.R.E., Rule 702. As such, his testimony aided the jury in understanding the evidence and determining a fact at issue in the case. (ie. Was the firearm operable?) Detective Kolcharno qualified as an expert by his knowledge, skill, experience, training, and education. The jurors, as the finders of fact, had the power to judge the testimony of Detective Kolcharno, and to give his testimony the weight that they thought it deserved. The Defendant was also given the full opportunity to cross examine Detective Kolcharno and to call his own expert witness on the issue. N.T. 2/11/14 p.109-111. Therefore, based on these facts and circumstances, this Court will not upset the determination made by the jury. The Defendant should be denied any of the relief that he requests with respect to this claim.

Next, the Defendant alleges that the Court erred in allowing Deputy Booth to testify as to the applicable law regarding firearms in Pennsylvania. Deputy Booth testified she is employed as a Deputy Sheriff for Lackawanna County Sheriff's Department. N.T. 2/10/14 at p. 75. Her responsibilities include issuing permits to carry a concealed weapon. Id. She testified about the

24

requirements for a person to carry a firearm concealed on their person or in their vehicle. Id. She also testified about the application process involved in obtaining a license through the Lackawanna County Sheriff's Office. Id.

On direct examination, Assistant District Attorney Rinaldi asked Deputy Booth the following question, "what is your understanding of carrying in the open?" Id. at p. 83. Defense Counsel objected and this Court overruled defense counsel's objection. Id. Deputy Booth went on to state "my understanding is that if a citizen carries a loaded weapon in the open, they're covered by the Constitution for that. They can carry a loaded handgun on their person in the open and it's a Second Amendment right." Id. This testimony is a statement of the law. The question now is whether the admission of this testimony constitutes reversible error.

The standard of review for this error is the harmless error doctrine. Commonwealth v. Spotz, 84 A.3d. 294, 314 (Pa.2014). ("…the harmless error analysis is typically applied when determining whether the trial court erred in taking or failing to take certain action.") The Pennsylvania Supreme Court has held "under the harmless error doctrine, the judgment of sentence will be affirmed in spite of the error only where the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict." Commonwealth v. Moran, 104 A.3d 1136, 1150 (Pa.2014). Continuing "whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless…" Spotz, 84 A.3d. at 314.

25

In closing jury instructions this Court gave the following instruction, "it is the Court's responsibility to decide all questions of law. And you must accept and follow my instructions and rulings on matters of law." N.T. 2/11/14 at p.224. In addition, this Court gave two additional cautionary instructions on this issue. The first was during direct examination of Officer Christopher Hallock. N.T. 2/10/14. at p. 92. Then, again, during cross-examination of the Defendant. N.T. 2/11/14 at pgs. 97-98. In total, the jurors were instructed on four (4) separate occasions that the Court is the judge of the law and the jury is bound by the Court's instructions on what the law is. In order to determine if testimony erroneously admitted contributed to the verdict, this Court must review the testimony presented in its entirety. As previously stated the Commonwealth presented four (4) law enforcement officers, each who testified they did not observe the firearm on the Defendant's waistband. N.T. 2/10/14 pgs.15, 44, 63, 105. Detective Kolcharno demonstrated to the jury that the firearm was operable. N.T. 2/10/14 p.30-31. Finally, Corporal McDonald, Deputy Sheriff Booth and the Defendant all testified the Defendant did not have a license to carry a concealed weapon. In evaluating the testimony this Court is satisfied the testimony even though it constituted error did not contribute to the verdict. Moran, 104 A.3d. at 1150.

### E. CONCLUSION

In conclusion, the verdict of guilty on the one count of Carrying a Firearm Without a License was supported by the evidence offered at trial.

Throughout the course of the trial, the Commonwealth, through corroborated witness testimony and other sufficient evidence, proved each and every element of the offense. Therefore, this Court finds that the issues raised in the Defendant's Statement of Matters Complained of on Appeal are without merit.

BY THE COURT

_____ J.