J-S19021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT A. MAIER | : | |
| | : | |
| Appellant | : | No. 783 WDA 2020 |

Appeal from the PCRA Order Entered June 29, 2020
In the Court of Common Pleas of Beaver County Criminal Division
at No:  CP-04-CR-0000195-2012

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: AUGUST 17, 2021**

Robert A. Maier (Appellant) appeals from the order dismissing the petition he filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On direct appeal, this Court recited the facts underlying Appellant's convictions as follows:

> In November of 2011, Appellant and his girlfriend, Ellen Rose ("Ellen"), had been in a romantic relationship for approximately twenty-three years.  N.T., 3/22/13, at 224.  The victim in this matter ("Victim") was Ellen's adult son, thirty-one-year-old Matthew Rose.  **Id.** at 52.  Victim and his wife Brandi Rose ("Brandi") had two young children.  **Id.** at 150.  Victim and Brandi were estranged due to Victim's substance abuse, but they were attempting to reconcile.  **Id.** at 154.  Appellant was upset about Victim's drug use, and he also suspected that Victim told the police that Appellant was selling marijuana.  **Id.** at 237-239.  . . .

---

[*] Retired Senior Judge assigned to the Superior Court.

[On] Saturday, November 26, 2011, . . . Appellant arrived at Ellen's house intoxicated at approximately 2:30 p.m. N.T., 3/22/13, at 170. Appellant, Brandi, and Victim convened in the kitchen. *Id.* Brandi and Appellant were talking while Victim read a newspaper. *Id.* at 176. Appellant began commenting on Brandi's decision to reconcile with Victim, and Appellant shared his belief that Victim informed the police about Appellant's marijuana dealing. *Id.* at 177-178. Victim gave no response and continued to read the newspaper. *Id.* Appellant then pulled out a handgun and pointed it at Victim. *Id.* at 178. Appellant took several steps toward Victim and fired the weapon at Victim. *Id.* at 179. The bullet struck Victim in the side, and Victim and Brandi fled outside the house. *Id.*

Appellant followed Victim and Brandi outside, and while Victim was moving toward a fence, Appellant shot him in the back. *Id.* at 185. Despite having been shot twice, Victim attempted to climb the fence, and Appellant fired a third shot striking Victim in the lower back causing him to fall. *Id.* at 186-188. The first shot pierced Victim's liver, and the third shot pierced the liver and cut a furrow through Victim's heart. N.T., 3/25/13, at 191-194. Victim died as a result of the third gunshot wound. *Id.* Appellant was arrested later that day, and police recovered the murder weapon from his truck. N.T., 3/22/13, at 89.

***Commonwealth v. Maier***, 970 WDA 2014, *1-3 (Pa. Super. May 20, 2015) (unpublished memorandum).

On March 27, 2013, a jury found Appellant guilty of first-degree murder and possession of a firearm with an obliterated serial number. The trial court sentenced Appellant on May 2, 2013 to life in prison. Appellant filed a timely post-sentence motion on May 7, 2013, and the trial court granted Appellant permission to file a supplemental post-sentence motion. On August 19, 2013, the trial court denied Appellant's post-sentence motions. Appellant filed a notice of appeal with this Court; however, we

dismissed the appeal on February 10, 2014, due to Appellant's failure to file a brief.

On April 21, 2014, Appellant filed a timely PCRA petition seeking the reinstatement of his direct appeal rights *nunc pro tunc*. By order filed May 12, 2014, the PCRA court reinstated Appellant's direct appeal rights, and on June 11, 2014, Appellant filed a timely, direct appeal *nunc pro tunc*. This Court affirmed Appellant's judgment of sentence and Appellant did not seek allowance of appeal with the Pennsylvania Supreme Court. ***See Maier, supra***.

On March 4, 2016, Appellant filed a *pro se* PCRA petition. The PCRA court promptly appointed counsel. However, for reasons unclear from the record, PCRA counsel did not file an amended petition until July 15, 2019. On December 12, 2019, the PCRA court issued notice of intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907, with an accompanying opinion addressing the issues raised in Appellant's amended petition. Appellant filed an untimely response.[1] The PCRA court dismissed Appellant's petition without a hearing on June 29, 2020. Appellant timely appealed. The court did not order Appellant to file a Pa.R.A.P. 1925(b)

---

[1] On January 28, 2020, the PCRA court granted Appellant's motion for an extension of time to file a response to the court's notice. The court permitted Appellant "to file any response to the Court's Opinion and Order of Intent to Dismiss His Amended Post Conviction Relief Act Petition Without Hearing within 30 days of the date of this Order." Order, 1/28/20. Appellant filed his response on April 30, 2020.

concise statement. On September 17, 2020, the PCRA court filed a Pa.R.A.P. 1925(a) opinion stating that its reasons for denying the petition were set forth in its order and opinion filed December 12, 2019, and it would not issue an additional opinion.

Appellant presents five issues on appeal:

I.  Whether prior legal counsel provided ineffective assistance of counsel in failing to request Jury Instructions on existing evidence in the record as to (1) [Appellant's] good character for peacefulness and/or truthfulness and (2) [Appellant's] diminished capacity to First Degree[?]

II.  Whether prior legal counsel provided ineffective assistance of counsel in failing to (1) elicit competent testimony from testifying witnesses and (2) locate, secure the attendance of, and present competent testimonial evidence from additional non-testifying witnesses of [Appellant's] good character for peacefulness, non-violence and/or truthfulness[?]

III.  Whether prior legal counsel provided ineffective assistance of counsel in failing to retain, or alternatively to seek court ordered funding to retain, an expert specialist in mental states to conduct a psychiatric and/or psychological evaluation of [Appellant] to determine his prior psychological and psychiatric history, including drug and alcohol abuse and/or mental health illnesses, in order to marshal evidence of his state of mind at the time of his actions during the incident to provide a defense to First Degree Murder of (1) Intoxication and (2) Diminished Capacity[?]

IV.  Whether the Trial Court violated [Appellant's] Due Process Rights And/or Rights to Fundamental Fairness by failing or refusing, sua sponte, to properly and adequately charge the jury as to [Appellant's] good character for peacefulness and/or truthfulness existing on the Record[?]

- 4 -

> V.    Whether the Trial Court violated [Appellant's] Rights to Assistance of Legal Counsel, Due Process, And/or Fundamental Fairness by failing or refusing [to] provide court ordered funding to retain, for the P.C.R.A. proceedings, an expert specialist in mental states to conduct a psychiatric and/or psychological evaluation of [Appellant] to determine his prior psychological and psychiatric history, including drug and alcohol abuse and/or mental health illnesses, in order to marshal evidence of his state of mind at the time of his actions during the incident to provide a defense to first degree murder of (1) intoxication and (2) diminished capacity, as said expert opinions bear on the ineffectiveness of prior legal trial counsel to fail to request court ordered funding to retain such an expert[?]

Appellant's Brief at 5-6.

In reviewing the PCRA court's dismissal of Appellant's petition, we examine "whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Busanet**, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." **Id.**

Appellant challenges the effectiveness of trial counsel. In deciding such claims, we begin with the presumption that counsel rendered effective assistance. **Commonwealth v. Bomar**, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a

reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted). A PCRA petitioner must address each of these prongs on appeal. *See Commonwealth v. Natividad*, 938 A.2d 310, 322 (Pa. 2007) (explaining "appellants continue to bear the burden of pleading and proving each of the *Pierce* elements on appeal to this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018).

We have reviewed the record mindful of the legal authority cited above. The crux of Appellant's overall argument in his five issues is that trial counsel was ineffective for failing to request a jury instruction on diminished capacity, and for failing to present witnesses to testify about Appellant's good character and reputation for peacefulness. Appellant argues he "suffered from depression and panic attacks, aided not really by prescription medication but by self medicating with alcohol and marijuana; and his level of depression and anxiety peaked causing insomnia in the days prior to the incident." Appellant's Brief at 11. Appellant asserts he had "no intention of shooting" the Victim, "he just lost control." *Id.* at 12. Additionally, Appellant states that "[v]irtually every Commonwealth witness testifying knew [Appellant] and each other and confirmed that [Appellant] was a person of good character for the traits of (1) peacefulness/non-violence and (2) truthfulness." *Id.*

In response, the Commonwealth cites the record and prevailing law in cogently arguing that Appellant's issues lack merit. *See* Commonwealth

Brief at 13-41. Furthermore, the Honorable Richard Mancini, sitting as the PCRA court, has authored a comprehensive 27-page opinion which specifically explains why Appellant's issues and arguments do not merit relief. For example, President Judge Mancini accurately states, "where a defendant raises a defense to first degree murder that he lacked the specific intent to kill the victim, the defendant admits the fact that he shot and killed the victim (he admits criminal liability), and character evidence regarding the defendant's character for peacefulness is inadmissible." PCRA Court Opinion, 12/12/19, at 16 (footnote 38, citing **Commonwealth v. Kim**, 888 A.2d 847, 853-54 (Pa. Super. 2005), omitted).

President Judge Mancini also references the "wealth of testimony" and reasons:

> Given the evidence presented at trial, it does not appear to this Court that [Appellant] presented sufficient evidence to warrant an instruction of diminished capacity. No expert testimony was provided to evidence a causal link between [Appellant's] depression and anxiety conditions [and] their effect on the cognitive functions necessary to form specific intent. No explanation by [Appellant] was provided as to the causal nexus. No other witnesses provided lay testimony regarding [Appellant's] conditions or their effect on [Appellant's] cognitive functions. Furthermore, [Appellant] himself stated that he "totally lost control," which is testimony concerning his inability to control his actions; inadmissible to establish a diminished capacity defense as it does not negate specific intent.

PCRA Court Opinion, 12/12/19, at 15 (footnote omitted). President Judge Mancini additionally observes that trial counsel did request, and the trial court gave the jury, an instruction as to voluntary intoxication, "which

practically speaking, deals with the same issue of lack of capacity to form specific intent as the diminished capacity instruction, except that the underlying condition is drunkenness rather than some mental disorder." *Id.* The court emphasized that despite this instruction, the jury found Appellant guilty of first-degree murder, concluding that Appellant possessed the specific intent to kill the Victim. *Id.*

Upon review, we find no merit to Appellant's claims of error by trial counsel and the PCRA court. Further, the PCRA court opinion properly addresses and resolves Appellant's issues, such that further commentary by this Court would be redundant. We therefore adopt the PCRA court's December 12, 2019 PCRA Opinion and Order as our own in disposing of this appeal, and direct the parties to attach a copy of the opinion to any relevant future filings.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/17/2021

**OPINION/ORDER**

### IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
### PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : 
  : 
vs. :    **No. 195 of 2012**
  : 
ROBERT A. MAIER : 

## PCRA OPINION AND ORDER

MANCINI, P.J.                                  DECEMBER ___, 2019

Petitioner, Robert A. Maier, was convicted by a jury of Murder in the First Degree on March 27, 2013. On May 2, 2013, Petitioner was sentenced to a term of life imprisonment. Petitioner filed the instant PCRA alleging ineffective assistance of trial counsel and requesting a new trial.

## PROCEDURAL HISTORY

On March 12, 2012, Petitioner was charged by way of Criminal Information with one (1) Count of Criminal Homicide,[1] and one (1) Count of Possession of Firearm with Alterations.[2]

On March 27, 2013, Petitioner was convicted by a jury of Murder in the First Degree.

On May 2, 2013, Petitioner was sentenced to a term of life imprisonment.

On May 7, 2013, Petitioner filed a Post-Sentence Motion which was denied by this Court on August 19, 2013. On May 8, 2013, this Court granted defense counsel's request to withdraw his appearance, and on May 24, 2013, Thomas Phillis of the Public Defender's Officer entered his appearance on behalf of Petitioner.

---

[1] 18 Pa.C.S. § 2501(a).
[2] 18 Pa.C.S. § 6110.2(a).

1

On September 18, 2013, Petitioner filed a timely Notice of Appeal. On September 19, 2013, this Court Ordered Petitioner to file a Concise Statement of Matters Complained of on Appeal. Petitioner timely filed said Statement on October 10, 2013.

On November 15, 2013, this Court issued its 1925 Opinion.

Petitioner's appeal was dismissed on February 10, 2014, due to Petitioner's failure to file a brief.

On April 21, 2014, Petitioner filed a timely PCRA seeking that his direct appeal rights be reinstated *nunc pro tunc*. By Order of this Court dated May 12, 2014, Petitioner's PCRA was granted and his direct appeal rights reinstated.

On June 6, 2014, Petitioner filed a new Notice of Appeal from the judgment of sentence, and this Court reissued its 1925 Opinion, originally filed on November 15, 2013, without supplement.

On May 20, 2015, the Superior Court of Pennsylvania affirmed the Petitioner's judgment of sentence. Following this decision, Petitioner did not file a Petition for Permission to Appeal to the Supreme Court of Pennsylvania. Therefore, Petitioner's judgment of sentence became final on June 19, 2015.

Petitioner timely filed the instant PCRA on March 4, 2016. This PCRA is deemed to be Petitioner's first PCRA. *Com. v. Karanicolas*, 836 A.2d 940 (Pa.Super. 2003).

In the instant PCRA, Petitioner alleges his conviction was due to a violation of his constitutional rights by the Court and ineffective assistance of counsel, and requests this Court grant him a new trial.

PCRA counsel raised and briefed the following issues:

I.   WHETHER PRIOR LEGAL COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST JURY INSTRUCTIONS ON EXISTING EVIDENCE IN THE RECORD

2

AS TO 1) PETITIONER'S GOOD CHARACTER FOR PEACEFULNESS AND/OR TRUTHFULNESS AND 2) DEFENDANT'S DIMINISHED CAPACITY TO FIRST DEGREE MURDER

II. WHETHER PRIOR LEGAL COUNSEL WAS INEFFECTIVE IN FAILING TO 1) ELICIT COMPETENT TESTIMONY FROM TESTIFYING WITNESSES AND 2) LOCATE, SECURE THE ATTENDANCE OF, AND PRESENT COMPETITION TESTIMONIAL EVIDENCE FROM ADDITIONAL NON-TESTIFYING WITNESSES OF DEFENDANT'S GOOD CHARACTER FRO PEEACEFULNESS, NON-VIOLENCE, AND/OR TRUTHFULNESS.

III. WHETHER PRIOR LEGAL COUNSEL WAS INEFFECTIVE IN FAILING TO RETAIN AN EXPERT SPECIALIST IN MENTAL STATES TO CONDUCT A PSYCHIATRIC AND/OR PSYCHOLOGICAL EVALUATION OF DEFENDANT TO DETERMINE HIS PRIOR MEDICAL, PSYCHOLOGICAL AND PSYCHIATRIC HISTORY IN ORDER TO MARSHAL EVIDENCE OF HIS STATE OF MIND AT THE TIME OF HIS ACTIONS TO PROVIDE A DEFENSE TO FIRST DEGREE MURDER VIA INTOXICATION AND DIMINISHED CAPACITY

IV. WHETHER PRIOR LEGAL COUNSEL WAS INEFFECTIVE IN FAILING TO SEEK COURT ORDERED FUNDING TO RETAIN AN EXPERT SPECIALIST IN MENTAL STATES TO CONDUCT A PSYCHIATRIC AND/OR PSYCHOLOGICAL EVALUATION OF DEFENDANT TO DETERMINE HIS PRIOR MEDICAL, PSYCHOLOGICAL AND PSYCHIATRIC HISTORY IN ORDER TO MARSHAL EVIDENCE OF HIS STATE OF MIND AT THE TIME OF HIS ACTIONS TO PROVIDE A DEFENSE TO FIRST DEGREE MURDER VIA INTOXICATION AND DIMINISHED CAPACITY

V. WHETHER A VIOLATION OF THE CONSTITUTION OF PENNSYLVANIA OR LAWS OF THIS COMMONWEALTH THAT SO UNDERMINED THE TRUTH-DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENCE COULD HAVE TAKEN PLACE BY THE COURT FAILING OR REFUSING TO PROVIDE COURT ORDERED FUNDING TO RETAIN, FOR THE PCRA PROCEEDINGS, AN EXPERT SPECIALIST AS SAID EXPERT OPINIONS BEAR ON THE INEFFECTIVENESS OF PRIOR LEGAL TRIAL COUNSEL.

VI. WHETHER A VIOLATION OF THE CONSTITUTION OF PENNSYLVANIA OR LAWS OF THIS COMMONWEALTH THAT SO UNDERMINED THE TRUTH-DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENCE COULD HAVE TAKEN PLACE WHERE THE COURT FAILED OR REFUSED, SUA SPONTE, TO PROPERLY AND ADEQUATELY INSTRUCT THE JURY AS TO PETITIONER'S GOOD CHARACTER FOR PEACEFULNESS AND/OR TRUTHFULNESS EXISTING ON THE RECORD.

To be eligible for PCRA relief, Defendant must plead and prove by a preponderance of the evidence four general requirements. 42 Pa.C.S.A. §§ 9541-9546. First, he must have been convicted of a crime under Pennsylvania law and be currently serving a sentence of incarceration, parole, or probation. 42 Pa.C.S.A. § 9543(a). Second, the conviction and sentence must have resulted from at least one of the errors and/or violations elucidated in 42 Pa.C.S.A. § 9543(a)(2). Third, the allegation of error must not have been previously litigated or waived. *Id.* Fourth, Defendant must demonstrate that the failure to litigate the claim could not have been "the result of any rational, strategic or tactical decision by counsel." *Id.*

In this case, Defendant was convicted of Murder in the First Degree, he is presently incarcerated due to his conviction, and the issue of Defendant's prior counsel's ineffectiveness has not been previously litigated or waived. The only issue as to Defendant's eligibility for relief, therefore, is whether he has plead and proved by a preponderance of the evidence a cognizable error. 42 Pa.C.S.A. § 9543(a)(2). Specifically in this case, the issues Petitioner raises is whether there was "[i]neffective assistance of counsel, which in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," 42 Pa.C.S.A. § 9543(a)(2)(ii); and, whether "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i).

For any ineffective assistance of counsel claim, there is a presumption that Counsel is effective. *Com. v. Rainey*, 928 A.2d 215, 224 (Pa. 2007).

> The standard to be applied in reviewing claims of ineffective assistance of counsel is well settled. The threshold inquiry in ineffectiveness claims is whether the

issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989); *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to **195 effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). The burden of establishing counsel's ineffectiveness is on the appellant because counsel's stewardship of the trial is presumptively effective. *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985).

*Com. v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194–95 (1994)(quoting *Commonwealth v. Weiss*, 530 Pa. 1, 5-6, 606 A.2d 439, 441 (1992)).

In summation, the petitioner must establish each of the following prongs: i) the underlying claim has arguable merit;[3] ii) trial counsel had no reasonable basis for his act or failure to act;[4] and iii) petitioner must show prejudice by counsel's ineffectiveness.[5] If Petitioner fails to establish any one of the prongs, his claim must fail.

Petitioner complains that his counsel was ineffective for four different reasons. The Court will now consider each of Petitioner's claims in turn.

---

[3] "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984).

[4] "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984)

[5] "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. **2067 United States v. Morrison, 449 U.S. 361, 364–365, 101 S.Ct. 665, 667–668, 66 L.Ed.2d 564 (1981). The purpose of the Sixth Amendment guarantee of counsel is to ensure *692 that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland v. Washington*, 466 U.S. 668, 691–92, 104 S. Ct. 2052, 2066–67, 80 L. Ed. 2d 674 (1984).

5

I. WHETHER PRIOR LEGAL COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST JURY INSTRUCTIONS ON EXISTING EVIDENCE IN THE RECORD AS TO 1) PETITIONER'S GOOD CHARACTER FOR PEACEFULNESS AND/OR TRUTHFULNESS AND 2) DEFENDANT'S DIMINISHED CAPACITY TO FIRST DEGREE MURDER

Petitioner avers that trial counsel was ineffective for failing to request jury instructions on existing evidence in the record as to 1) Petitioner's good character for peacefulness and/or truthfulness, and 2) Petitioner's diminished capacity regarding first degree murder.

The Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."[6] Hence, when a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury if the defense is supported by evidence of record.[7] It is the trier of fact that passes upon the evidence and it is improper for a trial judge to exclude consideration by refusing the charge.[8]

The jury must be instructed as to any defense, such as intoxication, insanity, or self-defense,[9] which has been properly raised, and the judge should provide the jury with an instruction identifying quantum of proof required to establish an affirmative defense to guilt and defining that burden of proof.[10]

**1) Failure to request jury instruction as to good character for peacefulness:**

Defendant argues that trial counsel was ineffective for failing to request a jury instruction as to Petitioner's good character for peacefulness and/or truthfulness.

    i.   Arguable Merit

---

[6] *Com. v. Markman*, 591 Pa. 249, 916 A.2d 586, 607 (2007), *citing Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146, 90 L. Ed. 2d 636, 20 Fed. R. Evid. Serv. 801 (1986).

[7] *Com. v. DeMarco*, 570 Pa. 263, 271, 809 A.2d 256, 261 (2002), *cited in Com. v. Markman*, 591 Pa. 249, 916 A.2d 586, 607 (2007).

[8] *Com. v. Markman*, 591 Pa. 249, 916 A.2d 586, 607 (2007), *citing Com. v. Lightfoot*, 538 Pa. 350, 355, 648 A.2d 761, 764 (1994).

[9] *Com. v. Borgella*, 531 Pa. 139, 611 A.2d 699 (1992).

[10] *Commonwealth v. Clark*, 453 Pa.Super. 257, 683 A.2d 901 (1996).

The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit...." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super.2004).

*Com. v. Taylor*, 2007 PA Super 282, ¶ 12, 933 A.2d 1035, 1041–42 (2007).

A defendant is entitled to a jury charge that evidence of good character or reputation may, in and of itself, create a reasonable doubt of guilt and require a verdict of not guilty.[11] When the issue is whether a defendant had a specific intent to kill or did not have that intent due to diminished capacity, character evidence is inadmissible and therefore the defendant was not entitled to an instruction on his reputation for peacefulness.[12]

> [B]ecause appellant conceded that he had shot and killed the victim, but claimed diminished capacity (admitting criminal liability for the murder, but arguing that he lacked the capacity to form the specific intent to kill). As character evidence is not admissible to support a diminished capacity defense, the lower court did not err with regard to the admissibility of the character evidence or *854 with regard to the lack of a jury instruction reflecting appellant's character for peacefulness.

*Com. v. Kim*, 2005 PA Super 383, ¶ 21, 888 A.2d 847, 853–54 (2005).

At trial, Petitioner did not deny that he shot the victim. The only issue before the jury was whether Petitioner had the specific intent to kill. Pursuant to *Kim, supra*, a defendant is not entitled to a jury charge as to his character for peacefulness where the defendant concedes that he shot and killed the victim. Therefore, this Court finds this claim to be without merit. As Petitioner failed to satisfy the first prong, his claim regarding ineffective assistance for failure to request a jury charge as to peacefulness must fail.

---

[11] *Commonwealth v. Neely*, 522 Pa. 236, 561 A.2d 1 (1989); *Com. v. Hoover*, 2011 Pa.Super. 42, 16 A.3d 1148 (2011).

[12] *Com. v. Kim*, 2005 PA Super 383, ¶¶ 18-21, 888 A.2d 847, 853–54 (2005) (finding Pennsylvania law clearly establishes that character evidence is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity)

7

**2) Failure to request jury instruction as to Petitioner's Diminished Capacity:**

Defendant argues that trial counsel was ineffective for failing to request a jury instruction as to Petitioner's diminished capacity regarding first degree murder.

i.   Arguable Merit

> The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit...." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super.2004).

*Com. v. Taylor*, 2007 PA Super 282, ¶ 12, 933 A.2d 1035, 1041–42 (2007).

Generally, a defendant who presents evidence supporting the defense of diminished capacity in a homicide case is entitled to a charge explaining the defense, and not just a charge explaining the various degrees of homicide.[13] If a defendant does not admit that he killed the victim, but rather advances an innocence defense, then an instruction on diminished capacity cannot be given.[14]

> To establish diminished capacity, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill. The mere fact of intoxication does not give rise to a diminished capacity defense. Likewise, evidence that the defendant lacked the ability to control his actions or acted impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished capacity defense.

*Com. v. Sepulveda*, 618 Pa. 262, 286, 55 A.3d 1108, 1122 (2012) citing *Commonwealth v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 312 (2011).

---

[13] *Commonwealth v. Zimmerman*, 351 Pa.Super. 5, 504 A.2d 1329 (1986); *Com. v. Taylor*, 583 Pa. 170, 876 A.2d 916 (2005)

[14] *Com. v. Sanchez*, 82 A.3d 943, 977 (Pa. 2013), *citing Com. v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 312 (2011), *cert. denied*, 132 S. Ct. 2711, 183 L. Ed. 2d 70 (2012).

8

In *Com. v. Sepulveda*,[15] the petitioner claimed trial counsel was ineffective for failing to pursue a diminished capacity defense and instruction. According to petitioner, trial counsel should have pursued a diminished capacity defense; however, such a defense was not pursued because counsel was unaware that there may have been relevant mental health evidence to support such a theory. In finding trial counsel effective, the Superior Court stated in part:

> we do not doubt that trial counsel could have uncovered some mental health evidence if he had conducted a more thorough pre-trial investigation. Nevertheless, even assuming that counsel could have discovered and developed some degree of opinion testimony along the lines of that offered by the multiple and overlapping experts hired by federal counsel, appellant has not proven that counsel was ineffective.

*Id.* 618 Pa. at 287.

The court continued, noting the specific facts of the case which made such a defense seem untenable:

> the notion that a diminished capacity defense might succeed with a jury, in the face of the circumstances of the murders here—including chasing the second victim down and bringing him back to the crime scene to finish him off, hiding and humiliating the corpses, speaking to police—relatively far-fetched. Moreover, the expert opinions below primarily focused on PTSD and hypervigilance, with the experts claiming that appellant lacked the ability to control his actions or that he acted impulsively. *See, e.g.,* Testimony of Dr. Stewart discussed *supra* (indicating that a PTSD sufferer would be more likely to react against perceived threats). It is not clear whether such mental health opinion evidence would have been admissible to support a *288 diminished capacity defense or, if admissible, would have been particularly strong or helpful.

*Id.* 618 Pa. at 287-88.

The court concluded:

> [G]iven appellant's existing accounts of his actions, the physical evidence, and the weakness of the now-proffered evidence as support for diminished capacity, we conclude that appellant has failed to prove that counsel was ineffective for not pursuing a diminished capacity defense.

*Id.* 618 Pa. at 288.

---

[15] 618 Pa. 262, 55 A.3d 1108 (2012).

9

The Official Comment to Pennsylvania's Standard Jury Instruction 5.01B (Diminished Capacity Defense) states, "[t]he diminished capacity defense is typically raised by the testimony of psychiatrists or other experts (regardless of which side calls them.)"[16] The committee notes, however, "[t]he question of whether proffered expert testimony pertains to the kind of mental disorder or abnormality (as distinguished, e.g., from a personality disorder or a nonpathological rage, panic, or other extreme emotion) that is relevant and a permissible subject of expert testimony is often troublesome."[17]

The crucial issue regarding whether sufficient evidence of diminished capacity was proffered by the petitioner is whether the testimony establishes a causal nexus between the disorder and the lack of capacity:

> The testimony must establish a legal causal link between the defendant's mental disorder and his or her lack of capacity. If both a mental disorder and some other legally irrelevant condition (e.g., dyssocial personality) contributed to the defendant's incapacity, there must be unequivocal medical or psychiatric testimony showing that the mental disorder was a substantial factor in causing the incapacity.[18]

While testimony of law witnesses is admissible on the question of diminished capacity,[19] the official comments to the instruction pose the question of whether the defense can be raised and a diminished capacity charge required with only lay witness testimony, which the subcommittee answers in the negative.[20]

---

[16] Comment to 5.01B (Crim) Diminished Capacity Defense to First-Degree Murder, Pa. SSJI (Crim), §5.01B (2016).
[17] *Id.*
[18] *Id.* (see section d. under the discussion of *Terry II*).
[19] See, e.g., *Commonwealth v. Cain*, 503 A.2d 959 (Pa.Super. 1986).
[20] "*Query* when, if ever, might lay testimony, without expert testimony, raise the defense and require a diminished capacity charge? The subcommittee cannot envision such a case. The lay testimony, of course, could be relevant to factual intent." Comment to 5.01B (Crim) Diminished Capacity Defense to First-Degree Murder, Pa. SSJI (Crim), §5.01B (2016).

The reason that mere lay testimony, while relevant, is insufficient is because absent an expert's review and analysis of a defendant's mental condition(s), the crucial causal nexus between the disorder and the lack of capacity to form intent cannot be established.

Accordingly, the mere fact of intoxication is insufficient to establish diminished capacity,[21] and evidence of wild behavior and schizophrenic conduct do not support a diminished capacity instruction as they do not go to the issue of whether or not the defendant had the capacity to form the specific intent to kill.[22] Likewise, testimony concerning a defendant's compulsion to kill or his so-called "irresistible impulse" is not admissible to establish a diminished capacity defense as it does not negate specific intent;[23] neither does a diagnosis of a personality disorder suffice to establish diminished capacity.[24] Moreover, the existence of prior mental disorders is irrelevant to a defendant's allegations of diminished capacity.[25]

In short, to warrant a jury instruction on diminished capacity, the evidence presented must "speak[ ] to mental disorders affecting the cognitive functions necessary to formulate a specific intent,"[26] a defendant is not entitled to a diminished capacity instruction where no evidence of such mental infirmity was offered.

In the case *sub judice*, Petitioner did not offer expert testimony, but he did testify as to his history of anxiety and depression.[27] However, none of this evidence established that Petitioner's

---

[21] *Com. v. Jones*, 539 Pa. 222, 651 A.2d 1101 (1994). See also *Com. v. Mason*, 634 Pa. 359, 130 A.3d 601 (2015); *Com. v. Sepulveda*, 618 Pa. 262, 55 A.3d 1108 (2012).

[22] *Com. v. Cuevas*, 574 Pa. 409, 832 A.2d 388 (2003). See also *Com. v. Ventura*, 2009 PA Super 96, 975 A.2d 1128 (2009), *appeal denied*, 987 A.2d 161 (Pa. 2009).

[23] *Mason*, 634 Pa. 359, 130 A.3d 601 (2015); *Com. v. Philistin*, 617 Pa. 358, 53 A.3d 1 (2012); *Com. v. Hutchinson*, 611 Pa. 280, 25 A.3d 277 (2011); *Com. v. Taylor*, 583 Pa. 170, 876 A.2d 916 (2005).

[24] *Com. v. Hutchinson*, 611 Pa. 280, 25 A.3d 277 (2011); *Com. v. Bracey*, 568 Pa. 264, 795 A.2d 935 (2001). See also *Mason*, 634 Pa. 359, 130 A.3d 601 (2015).

[25] *Com. v. Brown*, 396 Pa. Super. 171, 578 A.2d 461 (1990) (agreeing with the trial court that "a detailed description of appellant's past bizarre behavior is not relevant to appellant's alleged diminished capacity at the time of the criminal act.").

[26] *Com. v. Weinstein*, 499 Pa. 106, 451 A.2d 1344, 1347 (1982).

[27] Trial Transcript, Vol. I, p. 39 (petitioner claimed to have struggled with severe depression and anxiety for which he had been provided medication and for which he was placed on disability for a time) [hereinafter T.T.]; T.T., Vol.

11

struggles with anxiety and depression affected the cognitive functions necessary to formulate a specific intent or *how* such disorders could affect the cognitive functions necessary to formulate specific intent. Moreover, the evidence in this case, like that in *Sepulveda, supra*, leads this Court to believe that such a defense would have been untenable.

In the instant case, Petitioner, who did not typically carry a gun according to himself and other witnesses,[28] brought a handgun with him to a bar where he drank for hours.[29] He then left the bar and travelled to the victim's house, a person with whom he was upset and who petitioner believed informed on petitioner to police regarding drug activity.[30] Petitioner then sat down in victim's kitchen to speak with victim's wife, Brandi, regarding CYS allegations and the victim informing on petitioner to police while the victim stood near the counter reading, not engaged in the conversation between his wife and petitioner.[31] At some point, Petitioner made a comment regarding his belief that someone 'ratted' him out immediately before pulling out a gun and shooting the victim in the right abdomen. The victim fleed outside and the Petitioner followed after him, shooting the victim two more times: once in the back and once in the buttocks while the victim is attempting to scale a fence in an effort to escape the violence.

---

II, p. 131 (petitioner told police he had limited sleep and anxiety in the days leading up to the incident); T.T., Vol. III, pp. 75-78 (petitioner testified to experiencing anxiety, depression, and panic attacks in his early twenties; petitioner also testified to having anxiety and using marijuana and alcohol to self-medicate in the days leading up to the homicide).

[28] T.T., Vol. III, p. 85; T.T., Vol. III, pp. 111-112; T.T., Vol. VI, pp. 82-83 (testimony of Troy Corless, friend of Petitioner:
    Q. And prior to that day, had you ever seen Bob with a gun?
    A. Just hunting.
    Q. Had you ever seen him carry it to the bars, or
        anything like that?
    A. No. I have never seen Bob with a pistol ever.

[29] T.T., Vol. III, p. 85; T.T., Vol. I, p. 26 (Petitioner arrived at Double J Saloon around 9:30 a.m.); T.T., Vol. II, pp. 10-11 (testimony of bar owner that Petitioner left bar around 1:20 p.m.).

[30] Id., at pp. 86-87.

[31] T.T., Vol. I, at pp. 173-176.

Immediately thereafter, Petitioner calmly walked back through the house and out the front door, got in his truck and drove one hour and fifteen minutes to a friend's camp in Pymatuning where he testified that he contemplated suicide.[32]

At trial, the Petitioner claimed that he remembered going to the Double J Saloon, drinking there with his friend, arriving at the victim's house, entering the house, sitting in the kitchen talking with Brandi and then leaving the house, getting in his truck, and driving up to his friend's camp—but didn't remember the moment of the shooting at all. Petitioner's explanation for his lack of memory was that he was heavily intoxicated after being at the bar drinking for most of the day. However, the Commonwealth elicited testimony from various witnesses that Petitioner did not appear to be intoxicated to a degree that would support Petitioner's claims that he blacked out during the shooting.[33]

---

[32] T.T., Vol. III, p. 96.

[33] T.T., Vol. I, p. 186-188 (Victim's wife and eyewitness to homicide testified that Petitioner was not slurring his speech while talking with her and that he was speaking coherently); T.T., Vol. I, pp. 210-212 (Victim's wife testified on cross that Petitioner appeared irritated and knew Petitioner had been drinking, but that his intoxication level was no more than usual: "he drank every day [. . .] he was always drinking." Id. at 212.); T.T., Vol. II, pp. 10-12 (Bar Manager, Jeanine Foringer, testified that Petitioner was not drinking heavily: "he wasn't pounding beers down. He was moderately drinking."); Id. (Bar manager testified that Petitioner did not appear to be inebriated or intoxicated when he left: he wasn't staggering or slurring his speech); Id. (when asked if she shut off the Petitioner that day, the bar manager replied, "No. he didn't need to be shut off."); T.T., Vol. II, pp. 25-31 (Eric Foringer, who had been good friends with Petitioner for 31 years, testified that while drinking with him at the bar Petitioner did not appear different that day than any other, that Petitioner had no difficulty speaking or walking around, and in his opinion, Petitioner did not seem too intoxicated when he left); T.T., Vol. II, p.39 (Amy Fuller, bartender who served Petitioner, testified that Petitioner had approximately four or five beers and three shots); T.T., Vol. II, pp. 41-42 (Amy Fuller testified that Petitioner did not appear to have difficulty in walking around or speaking clearly and coherently while at the bar); T.T., Vol. II, p. 73 (Petitioner's friend, Troy Corless, testified that when he found Petitioner at his camp, Petitioner said things were bad and asked Troy if Mann was dead); T.T., Vol. II, pp. 75-76 (Troy Corless testified that while he was with Petitioner at Corless's camp, Petitioner said he wanted to commit suicide and that he had been looking for a police officer—ostensibly to commit suicide by cop—but could not find one); T.T., Vol. II, pp. 78-79 (Troy Corless testified that Petitioner told him to stay away from his truck because the gun he shot Matt with was in there and Petitioner did not want Coreless involved with it); T.T., Vol. II, p. 93-96 (Patrolman Jeremiah Christner, with the Greenville West Salem Police Department, testified that Petitioner did not have difficulty walking from the car to the station, and that Petitioner was able to coherently explain the precise location of his truck and the firearm within when asked to provide that information);

13

Petitioner testified that he did not know why he decided to go to the victim's house after the bar, stating that he probably did it because it was his routine.[34] Yet, moments later the Petitioner testified that he went to the victim's house to follow up on the CYS investigation.

> Q. And what's your mindset at this point in time?
> A. **I really don't know what my mindset was. I just stopped up there like I always did.**
> Q. So, all that testimony on direct examination about what a piece of crap Matt was, that had nothing to do with why you pulled up at 409 Jackson Street; isn't that right?
> A. **I wanted to see what was going on, CYS was supposed to be there, and I wanted to see what was developed from that.**
> Q. Okay. So now you're telling us that you wanted to see what was going on; isn't that right?
> A. **Well, I always stopped there, and it was just another time I stopped.**
> Q. Why is it that you wanted to see what was going on?
> A. **It wasn't so much I wanted to see what was going on. I just wanted to stop.**
> Q. Why did you want to stop?
> A. **Because I always did.**
> Q. Because you always did?
> A. **Yes.**
> Q. Did it have anything to do with the CYS incident?
> A. **I would say I wanted to see what happened, what they said about it.**
> Q. But you weren't upset about it at this point because you had already learned about it the day before; isn't that right?
> A. **Yeah, I would say I was still upset about it some.**

T.T., Vol. III, pp. 104-106.

Petitioner also testified that he did not know why he did it, stating, "I just totally lost control, and I don't know what happened." T.T., Vol. III, p. 100.

---

[34] *T.T.*, Vol. III, pp. 91-92.

14

Given the evidence presented at trial, it does not appear to this Court that the Petitioner presented sufficient evidence to warrant an instruction of diminished capacity. No expert testimony was provided to evidence a causal link between Petitioner's depression and anxiety conditions their effect on the cognitive functions necessary to form specific intent. No explanation by Petitioner was provided as to the causal nexus. No other witnesses provided lay testimony regarding Petitioner's conditions or their effect on Petitioner's cognitive functions. Furthermore, Petitioner himself stated that he "totally lost control," which is testimony concerning his inability to control his actions; inadmissible to establish a diminished capacity defense as it does not negate specific intent.[35]

Because the evidence was insufficient, the jury instruction was not available as a matter of law. Therefore, the claim that trial counsel was ineffective for failing to request said jury instruction is meritless.

Additionally, this Court notes that trial counsel did request and the jury was presented with an instruction as to voluntary intoxication, which practically speaking, deals with the same issue of lack of capacity to form specific intent as the diminished capacity instruction, except that the underlying condition is drunkenness rather than some mental disorder. Despite this instruction, the jury found Petitioner guilty of First Degree Murder, which means that the jury found that Petitioner possessed the specific intent to kill the victim.

Thus, the merit of Petitioner's claim notwithstanding, given this verdict and the facts of this case—specifically, the wealth of testimony regarding Petitioner's lack of heavy intoxication from those that saw him on the day in question, Petitioner's decision to bring a gun with him that day, his comment on his belief that someone ratted him out immediately before shooting the

---

[35] *Commonwealth v. Travaglia*, 541 Pa. 108, 124, 661 A.2d 352, 359 (1995), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996) (Evidence that the defendant lacked the ability to control his actions or that he acted impulsively will not establish diminished capacity).

15

victim,[36] then follow him outside to shoot him twice more, the inconsistency in his testimony about why he went over to the victim's house, and Petitioner's statements to Corless evidencing Petitioner's recollection of shooting the victim and asking if he was dead—this Court also finds that Petitioner was not prejudiced by trial counsel not requesting a jury instruction on Diminished Capacity.[37]

II.     WHETHER PRIOR LEGAL COUNSEL WAS INEFFECTIVE IN FAILING TO 1) ELICIT COMPETENT TESTIMONY FROM TESTIFYING WITNESSES AND 2) LOCATE, SECURE THE ATTENDANCE OF, AND PRESENT COMPETENT TESTIMONIAL EVIDENCE FROM ADDITIONAL NON-TESTIFYING WITNESSES OF DEFENDANT'S GOOD CHARACTER FOR PEACEFULNESS, NON-VIOLENCE, AND/OR TRUTHFULNESS.

Petitioner avers that trial counsel was ineffective for failing to 1) elicit competent testimony from testifying witnesses and 2) locate, secure the attendance of, and present competent testimonial evidence from additional non-testifying witnesses of Petitioner's good character for peacefulness/non-violence.

As stated in *section I, supra,* where a defendant raises a defense to first degree murder that he lacked the specific intent to kill the victim, the defendant admits the fact that he shot and killed the victim (he admits criminal liability), and character evidence regarding the defendant's character for peacefulness is inadmissible.[38]

---

[36] T.T., Vol. I, pp. 177-178.

[37] "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland v. Washington,* 466 U.S. 668, 691–92, 104 S. Ct. 2052, 2066–67, 80 L. Ed. 2d 674 (1984).

To show prejudice, the petitioner must show that had trial counsel pursued the contested course of action, there would have been a reasonable probability of a different outcome. A "reasonable probability" of a different outcome is a probability sufficient to undermine confidence in the outcome of the proceeding. *Com. v. King,* 57 A.3d 607, 630 (Pa. 2012). The Petitioner cannot merely assert that the outcome of the trial would have been different. Bald assertions and allegations, standing alone, are insufficient to satisfy this standard. *Com. v. Paddy,* 15 A.3d 421 (Pa.Super. 2011).

[38] *Com. v. Kim,* 2005 PA Super 383, ¶ 21, 888 A.2d 847, 853–54 (2005).

16

Logically, if such character evidence is inadmissible in Petitioner's trial, then trial counsel cannot be found ineffective for failing to elicit competent testimony from testifying witnesses regarding Petitioner's good character for peacefulness/non-violence, nor can he be found ineffective for failing to locate, secure the attendance of, and present competent testimonial evidence from additional witnesses regarding that same character trait.

Therefore, this Court finds Petitioner's claim meritless.

III. WHETHER PRIOR LEGAL COUNSEL WAS INEFFECTIVE IN FAILING TO RETAIN AN EXPERT SPECIALIST IN MENTAL STATES TO CONDUCT A PSYCHIATRIC AND/OR PSYCHOLOGICAL EVALUATION OF DEFENDANT TO DETERMINE HIS PRIOR MEDICAL, PSYCHOLOGICAL AND PSYCHIATRIC HISTORY IN ORDER TO MARSHAL EVIDENCE OF HIS STATE OF MIND AT THE TIME OF HIS ACTIONS TO PROVIDE A DEFENSE TO FIRST DEGREE MURDER VIA INTOXICATION AND DIMINISHED CAPACITY

Petitioner avers that trial counsel was ineffective for failing to retain an expert in mental states to conduct a psychiatric and/or psychological evaluation of Petitioner to determine his prior medical, psychological and psychiatric history in order to marshal evidence of his state of mind at the time of his action.

Initially, this Court acknowledges that the only way to prove diminished capacity under Pennsylvania law is to present expert testimony on how a claimed mental disorder affected the cognitive function necessary to form specific intent. *Zettlemoyer v. Fulcomer*, C.A.3 Pa. 1991, 923 F.2d 284, *rehearing denied, certiorari denied* 112 S.Ct. 280, 502 U.S. 902, 116 L.Ed.2d 232, *rehearing denied* 112 S.Ct. 624, 502 U.S. 1000, 116 L.Ed.2d 646. While this Court is not concluding that the Petitioner's claim has arguable merit, we nonetheless shall address the Reasonable Basis and Prejudice prongs under the *Strickland, supra,* analysis.

The second prong of the *Strickland* analysis requires this Court to determine whether trial counsel had no reasonable basis for his act or failure to act.

17

This Court reiterates that for any ineffective assistance of counsel claim, there is a presumption that Counsel is effective. *Com. v. Rainey*, 928 A.2d 215, 224 (Pa. 2007). Moreover, the court's evaluation of counsel's performance is "highly deferential." *Commonwealth v. Tharp*, 627 Pa. 673, 101 A.3d 736, 772 (2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest. *Commonwealth v. Eichinger*, *143 —— Pa. ——, 108 A.3d 821, 848 (2014) (citing *Commonwealth v. Williams*, 587 Pa. 304, 899 A.2d 1060, 1063–64 (2006)). As the Commonwealth accurately states, this cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests." *Commonwealth v. Dunbar*, 503 Pa. 590, 470 A.2d 74, 77 (1983).

*Com. v. Williams*, 636 Pa. 105, 142–43, 141 A.3d 440, 463 (2016).

In the instant case, it does not appear to this Court that there was any evidence of record to establish that Petitioner was, due to anxiety or depression, mentally deficient to such a degree that he was "overwhelmed to the point of losing his faculties and sensibilities."[39] Additionally, it does not appear from this Court's review of the record that the defense of Diminished Capacity due to anxiety and depression was ever seriously pursued by trial counsel.[40] Rather, trial counsel pursued the defense of Voluntary Intoxication:[41] trial counsel put on evidence of Petitioner's intoxication, cross-examined Commonwealth witnesses regarding Petitioner's state of intoxication, further questioned the Petitioner himself about his level of intoxication that day, and requested the voluntary intoxication instruction be read to the jury as a possible defense to

---

[39] *Com. v. Blakeney*, 596 Pa. 510, 516, 946 A.2d 645, 653 (2008) (quoting *Com. v. Breakiron*, 524 Pa. 282, 294, 571 A.2d 1035, 1041 (1990)).

[40] This Court's review of the entire transcript of the trial revealed a focus on intoxication and a request for an intoxication instruction, but no request for a diminished capacity jury instruction.

[41] A defense which is essentially the same as the Diminished Capacity defense, however, the cause of the diminished capacity is intoxication rather than a psychological condition.

18

the element of specific intent, which was in fact read to the jury. Given this obvious and effective, albeit unsuccessful, pursuit of the intoxication defense, under the standard set out above, this Court finds that trial counsel's decision to pursue the intoxication defense rather than the diminished capacity defense was a reasonable course of action designed to effectuate his client's interests and will not engage in second-guessing trial counsel via hindsight.[42]

*Assuming arguendo* that trial counsel lacked a reasonable basis for failing to call an expert as to Petitioner's diminished capacity, Petitioner's claim must fail as petitioner must show prejudice by counsel's ineffectiveness,[43] which he cannot do under the facts of this case.

In *Saranchak v. Beard*,[44] the United States District Court for the Middle District of Pennsylvania reversed the decision of the Pennsylvania Supreme Court dismissing Saranchak's PCRA, finding that the Pennsylvania Supreme Court's determination that petitioner was not prejudiced by deficient performance was unreasonable application of law.[45]

However, following an appeal by the State of Pennsylvania, the Third Circuit of the United States Court of Appeals reversed and remanded the case back to the Middle District of Pennsylvania, specifically finding that while trial counsel's performance was deficient for failing to offer expert testimony regarding the petitioner's diminished capacity—noting that Pennsylvania law requires expert testimony to establish the defense—the third circuit court found that trial counsel's deficient performance did not prejudice the petitioner because, "[t]he

---

[42] *Eichinger, supra.*

[43] "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364–365, 101 S.Ct. 665, 667–668, 66 L.Ed.2d 564 (1981).

[44] M.D.Pa.2008, 538 F.Supp.2d 847, reversed and remanded 616 F.3d 292, certiorari denied 132 S.Ct. 128, 565 U.S. 831, 181 L.Ed.2d 50, on remand 2012 WL 1414344.

[45] The Pennsylvania Supreme Court did find that Saranchak's representation by trial counsel was deficient for failure to investigate and present evidence related to petitioner's mental health and history of chronic alcoholism to support a diminished capacity defense. Specifically, the Pennsylvania Supreme Court found trial counsel deficient for the following reasons: trial counsel failed to provide only doctor to evaluate petitioner prior to degree of guilt hearing with background information concerning mental health history and history of alcoholism, failed to present testimony of petitioner's psychological impairments, and only evidence of diminished capacity presented at degree of guilt hearing was lay witness testimony that loosely described petitioner's drinking on day and night of killings.

19

Commonwealth presented overwhelming evidence of Saranchak's specific intent to murder Edmund and Stella at the degree of guilt hearing."[46] This overwhelming evidence was detailed by the court as follows:

> First, the injuries resulting in the deaths of both victims were caused by a rifle aimed at a vital part of the body. Under Pennsylvania law, "the use of a deadly weapon on a vital part of the body is sufficient evidence to prove the specific intent to kill."
>
> [. . .]
>
> Further, before Saranchak and Miles first left Courtney's Bar some hours before the shootings, Saranchak told Miles that he knew where they could get some money but that they might have to kill someone to get it. [. . .] Then, while enroute from Courtney's Bar to Saranchak's grandmother's house, Saranchak stopped to obtain his brother's .22 caliber rifle. When his wife pleaded with him not to leave with the rifle, Saranchak "feigned" that he was going hunting. [. . .] When Saranchak and Miles arrived at Stella's house, Saranchak exited the vehicle, rifle in hand, and declared he was going to get some money. [. . .] All of this is evidence of specific intent.
>
> When Saranchak entered the basement door of his grandmother's house, he walked directly to his uncle and shot him. [. . .] Saranchak and Miles then rolled Edmund's lifeless body back and forth while they searched through his pockets. [. . .] They then went upstairs, and Saranchak asked Miles to shoot Stella. When Miles refused, Saranchak shot her himself. [. . .] After killing Stella, Saranchak and Miles lowered the bedroom blinds and went through her personal belongings, looking for money to steal. [. . .] Before leaving, Saranchak returned to the basement to look for the shell casing spent in Edmund's killing.
>
> While incarcerated pending trial, Saranchak told Laurie Garber that he was not intoxicated on the night in question, but that he "snapped." He also told her that Edmund had "married a whore" and that Edmund's children had received an inheritance that was rightfully his. Saranchak described the killing of Edmund to Garber in a very matter of fact manner, and also conveyed to her the impression that he did Stella a favor by killing her because she was very ill. All of the foregoing supports a finding of specific intent.
>
> In addition to the evidence recounted above, and despite the alcohol consumed, we are mindful that at oral argument counsel acknowledged that Saranchak was doing all of the driving on the night of the murders. He drove himself and Miles from Courtney's Bar to a store to purchase beer, to his stepfather's house to get the gun, to a bar to purchase more beer, to his uncle and grandmother's house to shoot them, back to Courtney's Bar, and finally to a diner. Saranchak purposefully drove from place to place completing his intended objectives, demonstrating significant cognitive function.

---

[46] *Saranchak v. Beard*, 616 F.3d 292, 309 (3d Cir. 2010).

*Saranchak v. Beard*, 616 F.3d 292, 309–10 (3d Cir. 2010) (internal quotes and citations omitted).

Likewise, in *Com. v. Stevens*,[47] the Pennsylvania Supreme Court found no prejudice for failure to call an expert, "[because] the trial court found through circumstantial proof that the Commonwealth had established beyond a reasonable doubt that Appellant had the specific intent to kill, and therefore determined that Appellant suffered no prejudice by pursuit of a defense that would have been unsuccessful had Appellant's counsel presented it."[48]

In *Stevens*, the testimony at trial established the following:

[O]n the evening of the murders, Appellant became very angry when he saw Brenda Jo dancing with Love. Appellant slammed his forearms on the bar and stood and stared at Love and Brenda Jo and then left the bar. He retrieved his gun from beneath the seat of his vehicle and returned to the bar. Appellant walked toward the table area, pulled the gun from underneath his jacket, raised it, but then lowered it to his side and waited until Love and Brenda Jo were finished dancing. When they left the dance floor, Appellant cocked the gun and without hesitation walked up behind Brenda Jo and shot her in the back of the head at close range. He then turned to Love and shot him twice rapidly in succession, and fired at Love several times while he lay on the floor, including an intentional shot through the scrotum area. Appellant fired a last shot at Brenda Jo, hitting her again in the head. Appellant had fired a total of ten shots.

*Stevens*, 559 Pa. 171, 187–88, 739 A.2d 507, 516 (1999).

In upholding the trial court's determination, the Pennsylvania Supreme Court stated the following:

Based on this evidence of Appellant's deliberate actions in leaving the bar and returning to shoot his wife and Love multiple times, the trial court concluded that Appellant had formed the specific intent to kill. Notwithstanding Dr. Martone's revised diagnosis of Appellant's psychosis from the trial to the PCRA hearings, the trial court found through circumstantial proof that the Commonwealth had established beyond a reasonable doubt that Appellant had the specific intent to kill, and therefore determined that Appellant suffered no prejudice by pursuit of a defense that would have been unsuccessful had Appellant's counsel presented it. *We agree with the finding of the trial court that Appellant has not proved, by a preponderance of the evidence, that there was a reasonable probability that presentation of expert testimony concerning Appellant's psychosis would have successfully prevented the Commonwealth from proving*

---

[47] *Com. v. Stevens*, 559 Pa. 171, 739 A.2d 507 (1999).
[48] *Id.*, 559 Pa. at 187, 739 A.2d at 516.

*Appellant's    premeditation    beyond    a    reasonable    doubt.* Com. v. Stevens, 559 Pa. 171, 188, 739 A.2d 507, 516 (1999) (emphasis added).

In the case *sub judice*, like *Saranchak* and *Stevens, supra*, given the evidence produced at trial, and finding that "[t]he Commonwealth presented overwhelming evidence of [Petitioner's] specific intent to murder [Matt Rose] at the degree of guilt hearing,"[49] this Court finds that Petitioner has not proved, by a preponderance of the evidence, that there was a reasonable probability that presentation of expert testimony concerning Petitioner's anxiety and depression would have successfully prevented the Commonwealth from proving Petitioner's premeditation beyond a reasonable doubt.

Specifically, the overwhelming evidence supporting Petitioner's specific intent is as follows: like *Saranchak* and *Stevens*, Petitioner brought a gun with him to the bar (prior to becoming intoxicated) when all those that knew him testified that he never carried a gun unless he was hunting; like *Saranchak* and *Stevens* Petitioner shot a victim who he was angry with (and by whom Petitioner thought he was informed on to police regarding drug sales and was making up false allegations of child abuse against Petitioner—in addition to Petitioner's opinion that Matt Rose was a bad father and husband); like *Saranchak* and *Stevens* Petitioner shot his victim point blank and multiple times, but unlike *Saranchak* and *Stevens*, Petitioner went further in this case as he chased his victim outside and shot him again in the back, and then shot him a third time as the victim attempted to scale a fence to escape; and like *Saranchak*, where the court noted that, "despite the alcohol consumed, we are mindful that at oral argument counsel acknowledged that Saranchak was doing all of the driving on the night of the murders[,]" and concluding that such purposeful conduct that night in completing his intended objectives demonstrated significant cognitive function, this Court notes the fact that Petitioner similarly drove himself to the bar,

---

[49] *Saranchak*, 616 F.3d 292, 309 (3d Cir. 2010).

22

from the bar to the victims house,[50] and then from the victims house to a camp about one-and-a-half hours away,[51] without incident or accident, demonstrated significant cognitive function.

Lastly, like *Stevens*, this Court notes that the jury—which was provided with the voluntary intoxication instruction—in convicting Petitioner of first degree murder, found beyond a reasonable doubt that Petitioner possessed the specific intent to murder Matt Rose.

For these reasons, this Court finds that Petitioner, even with expert testimony, could not prove by a preponderance of the evidence that there was a reasonable probability that presentation of expert testimony concerning Petitioner's *anxiety* and *depression* would have successfully prevented the commonwealth from proving specific intent beyond a reasonable doubt.[52] Therefore, given that no prejudice was suffered by Petitioner, this claim must fail.

IV.   WHETHER PRIOR LEGAL COUNSEL WAS INEFFECTIVE IN FAILING TO SEEK COURT ORDERED FUNDING TO RETAIN AN EXPERT SPECIALIST IN MENTAL STATES TO CONDUCT A PSYCHIATRIC AND/OR PSYCHOLOGICAL EVALUATION OF DEFENDANT TO DETERMINE HIS PRIOR MEDICAL, PSYCHOLOGICAL AND PSYCHIATRIC HISTORY IN ORDER TO MARSHAL EVIDENCE OF HIS STATE OF MIND AT THE TIME OF HIS ACTIONS TO PROVIDE A DEFENSE TO FIRST DEGREE MURDER VIA INTOXICATION AND DIMINISHED CAPACITY

Petitioner avers that trial counsel was ineffective for failing to seek court ordered funding to retain an expert in mental states to conduct a psychiatric and/or psychological evaluation of Petitioner to determine his prior medical, psychological and psychiatric history in order to marshal evidence of his state of mind at the time of his action.

Appointment of expert witnesses and the provision of public funds to hire them to assist in the defense against criminal charges are decisions within the trial court's sound discretion and

---

[50] T.T., Vol. III, pp. 91-92; p. 117.

[51] T.T., Vol. III, p. 96.

[52] *Cf. Com. v. Stevens, supra* (where court held that even expert testimony regarding appellant's *psychosis* would not have provided a reasonable probability that appellant would have successfully prevented the Commonwealth from proving Appellant's premeditation beyond a reasonable doubt given the strength of the Commonwealth's case).

23

will not be reversed absent an abuse thereof. *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 707 (1998); *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61, 73 (1994). Although the Commonwealth is not obligated to pay for an expert's services, a capital defendant is entitled to the assistance of experts necessary to prepare a defense. *Id.* Additionally, while a defendant can request court-funded experts, a defendant to a murder charge claiming diminished capacity does not have a right to court-funded experts. [53]

At the outset, the Court notes that this claim is of arguable merit, as trial counsel could have requested such an expert. However, this Court need not concern itself with whether trial counsel was deficient for failing to request court-funding for an expert as the Petitioner, for the reasons stated in Section III, *supra*, of this Opinion, did not suffer prejudice as a result of trial counsel's failure to request an expert. Thus, this claim must fail.

## V. WHETHER A VIOLATION OF THE CONSTITUTION OF PENNSYLVANIA OR LAWS OF THIS COMMONWEALTH THAT SO UNDERMINED THE TRUTH-DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENCE COULD HAVE TAKEN PLACE BY THE COURT FAILING OR REFUSING TO PROVIDE COURT ORDERED FUNDING TO RETAIN, FOR THE PCRA PROCEEDINGS, AN EXPERT SPECIALIST AS SAID EXPERT OPINIONS BEAR ON THE INEFFECTIVENESS OF PRIOR LEGAL TRIAL COUNSEL.

Petitioner avers that there was a violation of his constitutional rights by the court failing or refusing to provide court ordered funding to retain an expert in mental states for the PCRA hearing.

Petitioner does not cite to any authority establishing Petitioner's right to such funding in the trial or PCRA hearing context. Petitioner does cite to *Ake v. Oklahoma*,[54] however, the case is inapposite. *Ake v. Oklahoma* stands for the proposition, "where a defendant has made a

---

[53] *Com. v. Pirela*, 556 Pa. 32, 49, 726 A.2d 1026, 1034–35 (1999) ("[w]e held in *Christy, supra,* that *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) mandates state assistance only where sanity, not diminished capacity, at the time of the offense is a significant issue at trial." *Id.*)

[54] *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

preliminary showing that his sanity at the time of the crime is likely to be a significant factor at trial and the defendant cannot otherwise afford a psychiatrist's assistance, a state must provide access to such assistance on the sanity issue in the preparation, trial and sentencing phases."[55]

The court in *Christy* continued:

> In Pennsylvania, a diagnosis of personality disorder is irrelevant to an insanity defense. *Commonwealth v. Weinstein*, 499 Pa. 106, 113, 114, 451 A.2d 1344, 1347 (1982). Further, Pennsylvania's version of the diminished capacity defense applies only to evidence affecting "cognitive functions necessary to formulate a specific intent." *Id.*, 499 Pa. 106, 114, 451 A.2d 1344, 1347 (1982). Appellant argues, in effect, that *Ake* applies whenever a defendant's psychiatric condition is a significant issue at trial. We disagree and continue to hold that *Ake* mandates state assistance only where sanity at the time of the offense is a significant issue at trial.[56]

Moreover, the right to court-funded experts only applies to capital defendants, which is not present in this case.[57] Given the general lack of a right to court-funded experts at the trial and penalty phases, and no authority cited by Petitioner evidencing the existence of such a right in the PCRA context, this Court concludes, *a fortiori*, that Petitioner's rights were not violated by the court's failure or refusal to appoint and fund an expert for the PCRA proceedings. Therefore, this claim must fail.

VI. WHETHER A VIOLATION OF THE CONSTITUTION OF PENNSYLVANIA OR LAWS OF THIS COMMONWEALTH THAT SO UNDERMINED THE TRUTH-DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENCE COULD HAVE TAKEN PLACE WHERE THE COURT FAILED OR REFUSED, SUA SPONTE, TO PROPERLY AND ADEQUATELY INSTRUCT THE JURY AS TO PETITIONER'S GOOD CHARACTER FOR PEACEFULNESS AND/OR TRUTHFULNESS EXISTING ON THE RECORD.

---

[55] *Com. v. Christy*, 540 Pa. 192, 202–03, 656 A.2d 877, 881 (1995).
[56] *Id.*
[57] *Com. v. Wholaver*, 605 Pa. 325, 344, 989 A.2d 883, 894 (2010).

Petitioner avers that his constitutional rights were violated by the court failing or refusing to properly and adequately instruct the jury as to Petitioner's good character for peacefulness and/or truthfulness.

For the same reasons stated in *Section I, supra,* of this Opinion, this claim lacks arguable merit and must fail.[58]

---

[58] *Com. v. Kim*, 2005 PA Super 383, ¶¶ 18-21, 888 A.2d 847, 853–54 (2005) (finding Pennsylvania law clearly establishes that character evidence is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity).

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
P E N N S Y L V A N I A
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :
    :
vs.    :    **No.   195 of 2012**
    :
ROBERT A. MAIER    :

## PRELIMINARY ORDER AND NOTICE OF COURT

MANCINI, P.J.         DECEMBER _12_ 2019

AND NOW, this _12th_ day of December, 2019, the Court finds that there are no genuine issues concerning any material fact and that the Petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings. Therefore, a Rule to Show Cause is issued upon Petitioner, ROBERT A. MAIER, to show cause, if any, as to why this Court should not dismiss Petitioner's request for PCRA relief. Said Rule shall be returnable and any written response must be filed within thirty (30) days of this Notice with the Beaver County Clerk of Courts.

BY THE COURT:

_____
P.J.

JUDY R. ENSLEN
CLERK OF COURTS
2019 DEC 12 PM 1: 54
BEAVER COUNTY
PENNSYLVANIA

27